**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JAMES MADISON PROJECT          *
1250 Connecticut Avenue, N.W.  *
Suite 200                      *
Washington, D.C. 20036         *
                               *
    Plaintiff              *
                               *
    v.                     *   Civil Action No. 07-_____
                               *
CENTRAL INTELLIGENCE AGENCY    *
Washington, D.C. 20505         *
                               *
    Defendant              *
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and the Administrative Procedure Act, 5 U.S.C. § 702 et seq., for the expedited processing of records in the possession or control of the Central Intelligence Agency ("CIA") pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri and other suspected terrorists.

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. §§ 552(a)(4)(B), 702 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. §§ 552(a)(4)(B), 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff The James Madison Project ("JMP") is a non-profit corporation organized under the laws of the District of Columbia with the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. It maintains its principal place of business in the District of Columbia.

4. Defendant CIA is an agency within the meaning of 5 U.S.C. § 552 (e) and is in possession and/or control of the records requested by JMP which are the subject of this action.

## BACKGROUND

5. In or around 2002, the CIA videotaped the interrogation of Al Qaeda operatives to include Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri, both of whom were in the CIA's custody.

6. At least two videotapes pertaining to these interrogations were willfully destroyed by the CIA in or around November 2005.

7. On December 6, 2007, CIA Director General Michael V. Hayden issued a statement to CIA employees on the "Taping of Early Detainee Interrogations." The statement read in full:

> The press has learned that back in 2002, during the initial stage of our terrorist detention program, CIA videotaped interrogations, and destroyed the tapes in 2005. I understand that the Agency did so only after it was determined they were no longer of intelligence value and not relevant to any internal, legislative, or judicial inquiries—including the trial of Zacarias Moussaoui. The decision to destroy the tapes was made within CIA itself. The leaders of our oversight committees in Congress were informed of the videos years ago and of the Agency's intention to dispose of the material. Our oversight committees also have been told that the videos were, in fact, destroyed.

If past public commentary on the Agency's detention program is any guide, we may see misinterpretations of the facts in the days ahead. With that in mind, I want you to have some background now.

CIA's terrorist detention and interrogation program began after the capture of Abu Zubaydah in March 2002. Zubaydah, who had extensive knowledge of al-Qa'ida personnel and operations, had been seriously wounded in a firefight. When President Bush officially acknowledged in September 2006 the existence of CIA's counter-terror initiative, he talked about Zubaydah, noting that this terrorist survived solely because of medical treatment arranged by CIA. Under normal questioning, Zubaydah became defiant and evasive. It was clear, in the President's words, that "Zubaydah had more information that could save innocent lives, but he stopped talking."

That made imperative the use of other means to obtain the information—means that were lawful, safe, and effective. To meet that need, CIA designed specific, appropriate interrogation procedures. Before they were used, they were reviewed and approved by the Department of Justice and by other elements of the Executive Branch. Even with the great care taken and detailed preparations made, the fact remains that this effort was new, and the Agency was determined that it proceed in accord with established legal and policy guidelines. So, on its own, CIA began to videotape interrogations.

The tapes were meant chiefly as an additional, internal check on the program in its early stages. At one point, it was thought the tapes could serve as a backstop to guarantee that other methods of documenting the interrogations—and the crucial information they produced—were accurate and complete. The Agency soon determined that its documentary reporting was full and exacting, removing any need for tapes. Indeed, videotaping stopped in 2002.

As part of the rigorous review that has defined the detention program, the Office of General Counsel examined the tapes and determined that they showed lawful methods of questioning. The Office of Inspector General also examined the tapes in 2003 as part of its look at the Agency's detention and interrogation practices. Beyond their lack of intelligence value—as the interrogation sessions had already been exhaustively detailed in written channels—and the absence of any legal or internal reason to keep them, the tapes posed a serious security risk. Were they ever to leak, they would permit identification of your CIA colleagues who had served in the program, exposing them and their families to retaliation from al-Qa'ida and its sympathizers.

> These decisions were made years ago. But it is my responsibility, as Director today, to explain to you what was done, and why. What matters here is that it was done in line with the law. Over the course of its life, the Agency's interrogation program has been of great value to our country. It has helped disrupt terrorist operations and save lives. It was built on a solid foundation of legal review. It has been conducted with careful supervision. If the story of these tapes is told fairly, it will underscore those facts.

8. Upon information and belief, numerous facts contained in General Hayden's statements are either inaccurate or misleading.

9. Upon information and belief, the videotapes were neither turned over nor even the existence revealed in several federal court proceedings where production should have occurred. For example, in or around 2003 and 2005 CIA lawyers told prosecutors handling the Zacharias Moussaoui case that the CIA did not possess recordings of interrogations sought by the judge even though, arguably, these destroyed tapes were potentially subject to disclosure to the defense.

10. Nor did the CIA disclose the videotapes to the September 11th Commission. According to Philip D. Zelikow, who served as the Commission's Executive Director, "The commission did formally request material of this kind from all relevant agencies, and the commission was assured that we had received all the material responsive to our request." He reportedly stated that "'No tapes were acknowledged or turned over, nor was the commission provided with any transcript prepared from recordings." Daniel Marcus, who served as the Commission's General Counsel, was also involved in the discussions about the existence of any interviews with Al Qaeda leaders and has stated he was told nothing about any tapes being destroyed. He publicly commented that if tapes were destroyed, "it's a big deal, it's a very big deal," particularly because it could amount to

obstruction of justice to withhold evidence being sought in criminal or fact-finding investigations.

11. Although the CIA claims the September 11th Commission never specifically asked for any tape recordings of prisoner interrogations, both co-chairmen, Thomas H. Kean and Lee H. Hamilton, have publicly stated they informed the CIA, verbally and in writing, that they wanted all material connected to the interrogations of Al Qaeda operatives in the agency's custody.  Former Congressman Hamilton was quoted as saying "The CIA certainly knew of our interest in getting all the information we could on the detainees, and they never indicated to us there were any videotapes…Did they obstruct our inquiry? The answer is clearly yes. Whether that amounts to a crime, others will have to judge."

12. On December 8, 2007, the Justice Department and the CIA's Office of Inspector Genera initiated a joint preliminary inquiry into the destruction of any videotapes depicting interrogations of top operatives of Al Qaeda. Additionally, it was announced that investigations would be commenced by both the Senate and House intelligence committees. The Department of Justice and CIA initially refused to cooperate with the Congressional oversight committees but that position was reversed particularly after it became public that several White House attorneys - Alberto R. Gonzales, who served as White House counsel until early 2005; David S. Addington, who was the counsel to Vice President Dick Cheney and is now his chief of staff; John B. Bellinger III, who until January 2005 was the senior lawyer at the National Security Council; and Harriet E. Miers, who succeeded Mr. Gonzales as White House counsel – participated in discussions surrounding the destruction of the tapes.

13. When the Justice Department urged the House panel to postpone any inquiry on the grounds it might hinder the ongoing internal review, the House committee's Democratic chairman, Representative Silvestre Reyes of Texas, and the ranking Republican member, Representative Peter Hoekstra of Michigan, refused noting that there were numerous precedents for Congressional inquiries to proceed in parallel with criminal investigations. On December 19, 2007, the CIA reversed its earlier position and agreed to make documents related to the destruction of the videotapes available to the House Intelligence Committee and to allow the CIA's acting General Counsel, John A. Rizzo, to testify about the matter. A hearing is set to tentatively occur on January 16, 2008.

14. Upon information and belief, John D. Negroponte, who was Director of National Intelligence at the time the tapes were destroyed, sent a memorandum in Summer 2005 to Hon. Porter Goss, then CIA director, advising against destroying the tapes. Allegedly, then White House counsel Harriet Miers also provided similar advice.

15. Upon information and belief, the actual decision to destroy the tapes was made by Jose A. Rodriguez Jr., who was then head of the Directorate of Operations (now the National Clandestine Service). It has been reported that Mr. Rodriguez received legal guidance from two CIA lawyers, Steven Hermes and Robert Eatinger, and that written guidance was created concluding Mr. Rodriguez had the authority to destroy the tapes and that the destruction would violate no laws.

16. Upon information and belief, the destruction of the tapes and/or their withholding from relevant court proceedings or investigations constituted a violation of law.

## COUNT ONE (CIA FOIA REQUEST)

17. JMP repeats and realleges the allegations contained in paragraphs 5 through 16 above, inclusive.

18. By letter dated December 9, 2007, JMP submitted a FOIA request for disclosure of all:

   (a) records pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri – please refer to the enclosed newspaper articles for spelling variations;

   (b) records, including correspondence, created after September 11, 2001, with Members of Congress or its Committees, The 9/11 Commission ("National Commission on Terrorist Attacks Upon the United States") or the Department of Justice about (1) the existence of videotapes of interrogations of terrorist suspects; (2) requests for access to videotapes of interrogations of terrorist suspect; (3) warnings or instructions not to destroy any videotapes of interrogations of terrorist suspect; and/or (4) any investigation into your Agency's destruction of the tapes identified in (a);

   (c) records of interrogatory or document production requests, or any records discussing CIA responses thereto, received as part of any criminal prosecutions that sought acknowledgment of the existence and/or copies of videotape interrogations of terrorist suspects since September 11, 2001;

   (d) records of Freedom of Information Act requests received by your Agency after September 11, 2001, for copies of any records pertaining to videotape interrogations of terrorist suspects; and

   (e) records pertaining to (a) that specifically reflect the identity of the attorney within your Agency's Office of General Counsel who approved the destruction of the videotapes and any records setting forth the policy or legal analysis underlying that conclusion.

19. The request sought a waiver of all fees and expedited processing. Numerous copies of news articles and editorials from *The New York Times*, *The Washington Post*, *Los Angeles Times* and other publications, as well as a list of selected newspaper articles – as just as an example – was submitted to the CIA to demonstrate the wide-spread world-wide interest in the topic.

20. The CIA was required to issue a determination on the request for expedited processing "within 10 days after the date of the request." 5 U.S.C. § 552 (a)(6)(E)(ii)(I). Thus, a response was due by on or before December 20, 2007.

21. As of the date of this filing, no response was received from CIA by JMP.

22. JMP has a legal right under the FOIA to be granted expedited processing.

### COUNT TWO (APA - EXPEDITED PROCESSING)

23. JMP repeats and realleges the allegations contained in paragraphs 5 through 16 above, inclusive.

24. JMP submitted a request to the CIA dated December 9, 2007, for expedited processing of all responsive records.

25. The CIA has failed to timely respond within the required ten day calendar period as required by statute and CIA regulation.

26. JMP has met the requisite requirements as set forth in the CIA's internal regulations and the FOIA is entitled to expedited processing of its FOIA request.

27. The CIA has failed to comply with the requisite statutory periods that govern compliance under its agency regulations. Therefore, the CIA has violated the requirements of its internal regulations.

28. JMP is not required to exhaust administrative remedies with respect to a denial of a request for expedited processing, nor under circumstances where an agency has failed to issue a formal determination regarding the request.

29. JMP has a legal right under the CIA's regulations to be granted expedited processing, and there is no legal basis for the denial by the CIA of said right.

WHEREFORE, plaintiff James Madison Project prays that this Court:

(1) orders the CIA to grant expedited processing, or otherwise expedite this action in every way pursuant to 28 U.S.C. § 1657 (a);

(2) award JMP reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d); and

(3) grant such other relief as the Court may deem just and proper.

Date:   December 21, 2007

                                 Respectfully submitted,

                                   /s/
                               _____

Mark S. Zaid, Esq.
DC Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

# CIVIL COVER SHEET

JS-44
(Rev. 1/05 DC)

## I (a) PLAINTIFFS
The James Madison Project

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington, D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Mark S. Zaid, Esq.
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
(202) 454-2809

## DEFENDANTS
Central Intelligence Agency

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:07-cv-02306
Assigned To : Walton, Reggie B.
Assign. Date : 12/21/2007
Description: FOIA/Privacy Act

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction
Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| G. Habeas Corpus/ 2255 | H. Employment Discrimination | ● I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☒ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| K. Labor/ERISA (non-employment) | L. Other Civil Rights (non-employment) | M. Contract | N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
● 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action for expedited processing under the Freedom of Information Act, 5 USC 552, and Administrative Procedure Act, 5 USC 702 et seq.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE December 21, 2007   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.