**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| and MATTHEW COLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv02306 (RBW) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS

Defendant Central Intelligence Agency ("CIA") hereby moves for a stay of proceedings in the above-captioned matter pending completion of the federal criminal investigation into the destruction of videotapes by the CIA, and disposition of any resulting indictments and prosecutions. The grounds for the motion are set forth in the accompanying memorandum of points and authorities. A proposed order is also enclosed.

In accordance with Local Civil Rule 7(m), counsel for the defendant has consulted with counsel for plaintiffs, who has indicated that plaintiffs intend to oppose this motion.

Dated: June 9, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

<u>/s/ Vesper Mei</u>
VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| and MATTHEW COLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv02306 (RBW) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR A STAY OF PROCEEDINGS**

**INTRODUCTION**

This is a Freedom of Information Act ("FOIA") case seeking documents pertaining to the

Central Intelligence Agency's ("CIA") destruction of videotaped interrogations. After the CIA's

destruction of videotapes was made public, the Attorney General directed first a preliminary

inquiry, and then a full criminal investigation into the destruction of videotapes. This

investigation is ongoing. The documents that plaintiffs seek in their FOIA requests are closely

related to the questions that the criminal investigation seeks to answer, and the CIA's review and

processing, and any release, of these documents, would substantially interfere with the criminal

investigators' ability to conduct a complete, thorough and untainted federal criminal

investigation into the destruction of videotaped interrogations. As a result, the criminal

investigators have requested that the CIA seek a stay in this case pending disposition of the

criminal investigation, a process that they expect, based on presently available information, will

take at least six more months. If indictments and criminal prosecutions result from the

investigation, the investigators would request that the CIA seek a further stay of the proceeding

until the conclusion of the criminal proceedings.

## BACKGROUND

Plaintiff, The James Madison Project ("JMP"), filed this FOIA suit on December 21, 2007, seeking expedited processing and the release of "records in the possession or control of the Central Intelligence Agency ("CIA") pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussain Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri and other suspected terrorists."  Plaintiff's First Amended Complaint ("Compl.") at 1.  After JMP amended its complaint to add as a plaintiff Matthew Cole, a journalist (and to whom the CIA had granted expedited processing for the identical FOIA request), the CIA filed its answer on February 19, 2008.

The CIA's destruction of videotapes was made public on December 6, 2007, with an announcement by CIA Director Michael V. Hayden.  Shortly after the destruction of the videotapes was made public, Attorney General Michael Mukasey directed a preliminary inquiry, and shortly thereafter, on January 2, 2008, a full criminal investigation, into the destruction of the tapes.  That criminal investigation has been ongoing, and, because the CIA's processing and review of the documents potentially responsive to plaintiffs' FOIA request would interfere with the criminal investigators' ability "to conduct a complete, thorough, and untainted federal criminal investigation into the destruction of videotaped interrogations" June 9, 2008 Declaration of John H. Durham ("Durham Decl.") ¶ 9, the criminal investigation serves as the basis for this request for a stay.

As set forth more fully in the Durham Declaration, central questions in the criminal investigation substantially overlap with information contained within the documents sought by

plaintiffs.  Durham Decl. ¶ 6.  In addition, the individuals responsible for the review and

processing of documents are potential witnesses in the criminal investigation, and their access to

these documents creates the risk that their recollections may be changed as a result of their

review.  Id.  Further, any public disclosures of the documents or other information sought in this

FOIA case could expose witnesses to versions of the events different from their own

recollections, and could cause those witnesses, intentionally or otherwise, to change what they

have to say or to conform their testimony to any such publicly disclosed information.  Id. ¶ 8.

        After receiving the plaintiffs' FOIA request and granting expedited processing in January

2008, the CIA began its search for responsive documents.  While the parties initially hoped to

negotiate a processing and release schedule that would eliminate the need for further litigation,

they were unsuccessful.  In the meantime, the CIA and the criminal investigators realized that

because of the overlap between the documents sought by plaintiffs in this litigation as well as the

central questions raised (and the possibility of influencing the recollections and testimony of

potential witnesses) in the criminal investigation, proceeding with plaintiffs' FOIA request would

interfere with the integrity of the criminal investigation.  As a result, the criminal investigators

requested that the CIA seek a stay of the FOIA lawsuit.  Based upon presently available

information, they estimate that the investigative process will take at least six more months.

Durham Decl. ¶ 11.  If indictments and criminal prosecutions were to result from the

investigation, they would request that the defendant seek a further stay of this proceeding until

the conclusion of the criminal proceedings.  Id.

## ARGUMENT

**I.    CIVIL ACTIONS RELATING TO A PENDING CRIMINAL INVESTIGATION ARE COMMONLY STAYED IN ORDER TO AVOID COMPROMISING A CRIMINAL INVESTIGATION.**

This Court has the authority to issue a stay of proceedings in this case.  As the Supreme Court has held, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254 (1936).  The law is well-established, moreover, that this discretionary authority is properly exercised when a civil action threatens to interfere with a related criminal proceeding.  See United States v. Kordel, 397 U.S. 1, 12 n. 27 (1970) (citing cases); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980).  This authority allows a court to "stay civil proceedings, postpone civil discovery or impose protective orders and conditions when the interests of justice seem to require such action."  Dresser, 628 F.2d at 1375.  "When a civil proceeding may interfere with a criminal investigation, it is not uncommon that the United States will seek to stay . . . the civil action in order to protect the criminal investigation."  United States v. Any and All Assets of that Certain Business Known as Shane Co., 147 F.R.D. 99, 101 (M.D.N.C. 1993) (noting further that such requests are "presumptively reasonable").  "The decision to stay a civil action pending the completion or declination of a criminal investigation lies within the sound discretion of the trial court."  Horn v. District of Columbia, 210 F.R.D. 13, 15 (D.D.C. 2002) (citing cases).

The principle supporting a stay of civil proceedings applies throughout the pendency of a criminal investigation, regardless of whether an indictment has issued.  Thus, numerous courts have stayed civil proceedings related to ongoing criminal investigations prior to the issuance of

any indictment.[1]  See, e.g., St. Paul Fire & Marine Ins. Co., 24 Cl. Ct. 513, 516-17 (Cl. Ct. 1991);

Souza v. Schiltgen, 1996 WL 241824 at *2-*3 (N.D. Cal. 1996); Shane Co., 147 F.R.D. at 102;

Capital Engineering & Manufacturing Co., Inc. v. Weinberger, 695 F. Supp. 36, 41-42 (D.D.C.

1988); Integrated Generics, Inc. v. Bowen, 678 F. Supp. 1005, 1009 (E.D.N.Y. 1988); United

States v. Hugo Key & Son, 672 F. Supp. 656, 657-59 (D. R.I. 1987); Larouche Campaign v. FBI,

106 F.R.D. 500, 501-02 (D. Mass. 1985).

When warranted, stays to protect pending criminal investigations may apply to suspend

all proceedings in a civil case.  See, e.g. St. Paul Fire & Marine Ins. Co., 24 Cl. Ct. at 516-17;

Souza, 1996 WL 241824 at *2-*3; Integrated Generics, Inc., 678 F. Supp. at 1009; Hugo Key &

Son, 672 F. Supp. at 657-59; see also, e.g., Hatfill v. Ashcroft, Civil Action No. 03-1793

(D.D.C.) (Walton, J.) (Minute Entry dated March 29, 2004); Alexander v. Federal Bureau of

Investigation, Civil Action No. 96-2123 (D.D.C.) (Lamberth, J.) (Docket No. 13).  The Dresser

court identified as relevant considerations the prospect that either the defense or the prosecution

might obtain discovery that would not ordinarily be available in a criminal case; the possibility

---

[1] While some courts have stated that stays should generally be denied in the absence of an indictment, these statements have come in the context of cases where the stay is sought not at the behest of the government investigators or prosecutors, but rather the moving party is the party under investigation in the related criminal proceeding, and thus where self-incrimination dangers, rather than threats to effective law enforcement, are the operative concern.  Compare Hicks v. New York, 268 F. Supp. 2d 238, 242 (E.D.N.Y. 2003) ("[A] court will generally deny a stay where no indictment has been issued against the proponent of the stay.") (emphasis added) with Baranski v. Fifteen Unknown Agents of ATF, 195 F. Supp. 2d 862, 870-71 (W.D. Ky. 2002) (granting government's pre-indictment motion for stay, distinguishing cases where party under investigation is stay movant).  Moreover, even where the party under investigation is the stay movant, some courts have rejected a general rule against pre-indictment stays.  See, e.g., White v. Mapco Gas Products, 116 F.R.D. 498, 502 n.4 (E.D. Ark. 1987) ("That an indictment has not yet been returned does not make consideration of the motion for a stay any less appropriate.") (citing Brock v. Tolkow, 109 F.R.D. 116, 120 n.2 (E.D.N.Y. 1985)).

that Fifth Amendment issues would be implicated; the chance that a criminal defendant's theory

of defense would be revealed prematurely; or the risk that the criminal matter would be otherwise

prejudiced.  Dresser, 628 F.2d at 1376.  Factors for a court to consider in deciding whether such a

stay is warranted are:  whether the two matters involve related issues, whether a stay would or

would not create hardship or inconvenience for the courts or the parties, and whether the duration

of a stay is reasonable.  See, e.g., United States ex rel. Westrick v. Second Chance, 2007 WL

1020808 (D.D.C. 2007); St. Paul Fire and Marine Ins.

## II.    A STAY OF THIS CIVIL FOIA CASE IS WARRANTED.

### A.    The Pending Criminal Investigation into the CIA's Destruction of Certain Videotaped Interrogations of Detainees Is Closely Related to this FOIA Case and Could Be Harmed if the FOIA Case Proceeded.

In deciding whether to stay civil proceedings in light of a pending criminal investigation,

a key issue is the risk of prejudice to the investigation due to its relation to the civil case.  Estate

of Gaither v. District of Columbia, 2005 WL 3272130, *3 (D.D.C. 2005).  In this case, plaintiffs'

FOIA requests seek documents "pertaining to the 2005 destruction of videotapes of the

interrogations of Zayn Abidin Muhammed Hussain Abu Zubaida (a/k/a Abu Zubaydah) and Abd

al-Rahim al-Nashiri and other suspected terrorists."  Compl. at 1.  Each of the five categories of

documents that plaintiffs seek in their requests relate directly to the destruction of the videotapes,

broadly seeking documents relating to communications with Congress about the videotapes;

records "received as part of any criminal prosecutions that sought acknowledgment of the

existence and/or copies of videotape interrogations of terrorist suspects since September 11,

2001"; and records pertaining to "the identity of the attorney within your Agency's Office of

General Counsel who approved the destruction of the videotapes and any records setting forth the

policy or legal analysis underlying that conclusion." See Compl. ¶ 22.

Plaintiffs' FOIA requests substantially overlap with questions central to the ongoing federal criminal investigation into the destruction of the videotapes. As set forth in the Durham Declaration, the criminal investigation is broad, essentially looking into all aspects of the destruction of the videotaped interrogations, including whether anyone obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes. Durham Decl. ¶ 4. These inquiries involve questions about who knew of the videotaped interrogations, who was aware of the various orders that might have required their preservation, and who was involved, in any way, in the decision and/or directive to destroy the videotapes. Id. ¶ 6. Clearly, every category of plaintiffs' FOIA requests is intertwined with the inquiries involved in the federal criminal investigation. Moreover, as set forth more fully in the Durham Declaration, because the review and processing of the documents potentially responsive to plaintiffs' FOIA requests will be done by individuals who are potential (and essential) witnesses in the investigation, such review and processing could well prejudice the criminal investigation by causing these witnesses to, unintentionally or intentionally, change their testimony to conform their version of events to the documents. Id. ¶ 7. Moreover, to the extent that any public release of responsive documents or information contained within may occur, such a release could also affect the recollections and testimony of witnesses for the investigation. Id. ¶ 8. Thus, the close relationship between this civil FOIA case and the ongoing federal criminal investigation into the destruction of the videotapes favors a stay of this FOIA case.

**B.     The Stay Would Not Create a Hardship for the Plaintiffs.**

Plaintiff JMP is a non-profit corporation "with the primary purpose of educating the

public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing." Compl. ¶ 3. Plaintiff Matthew Cole is an investigative journalist who is currently writing a book about the CIA. Id. ¶ 4. The plaintiffs made their FOIA requests and seek the documents in order to "contribute to the public's understanding of government operations or activities." December 9, 2007 letter from Mark S. Zaid to Scott A. Koch (Ex. A) at 3; December 27, 2007 letter from Mark S. Zaid to Scott A. Koch (Ex. B) at 2. They also apparently seek to allow the public to make its own evaluation of the CIA's destruction of the tapes, stating:

> Not only does the destruction of the tapes have the potential to serve, either by appearance or in reality, as evidence of inappropriate or unlawful efforts by the CIA to destroy evidence, but it also raises the possibility of whether the CIA and its officials, particularly those within its Office of General Counsel, knowingly and willingly obstructed justice. It goes without saying that potential criminal actions by the CIA and its officials are 'relevant to a subject of public urgency' and therefore satisfy the 'compelling need' standard.

Ex. A at 3-4; Ex. B at 3. In short, plaintiffs seek these documents in order to provide information to the public, and the questions that plaintiffs believe these documents would answer substantially overlap with the very questions the criminal investigators hope to answer. Cf. Durham Decl. ¶ 4 ("The questions under active review in this investigation include, *inter alia*, whether any federal criminal offenses were committed in connection with the destruction of the above-referenced videotapes. More specifically, the investigation team is actively reviewing whether any person or persons obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes. With respect to potential obstruction of justice offenses, we are investigating whether the destruction of the videotapes violated any order issued by any federal judicial officer and, if so, what the person or persons'

knowledge, motive, and/or intent was in destroying the tapes or causing their destruction.").

The public's interest in the integrity of the criminal investigation, however, takes priority over the plaintiffs' interest in disseminating information (even to the public) that would squarely implicate the integrity of that investigation, and, to the extent that plaintiffs' FOIA requests are made in the public interest, that interest will be vindicated through the criminal investigation (and any subsequent release of documents in this FOIA case or otherwise). Public policy "gives priority to the public interest in law enforcement." Benevolence Int'l Found., Inc., 200 F. Supp. 2d at 941 (quoting Campbell, 307 F.2d at 487); see also Jones v. City of Indianapolis, 216 F.R.D. 440, 452 (S.D. Ind. 2003) ("The public also has an important interest in a potential, untainted criminal prosecution."); Baranski v. Fifteen Unknown Agents of ATF, 195 F. Supp. 2d 862, 870 (W.D. Ky. 2002) (finding that the public interest served by protecting the integrity of a criminal investigation outweighed the plaintiff's interest in pursuing the civil action); Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 529 (D.N.J. 1998) (holding that a unimpeded criminal investigations "benefit the public"); Bureerong v. Uvawas, 167 F.R.D. 83, 87 (C.D. Cal. 1996) ("[T]he interests of the Government in protecting its criminal investigation are clearly the paramount concern here."); Hugo Key & Son, Inc., 672 F. Supp. at 658-59 ("[T]his court is compelled to acknowledge the greater weight of [the government's] interest in determining the priority of the criminal action."). Given the circumstances described herein, and in the accompanying declaration, a stay in deference to the ongoing investigation is warranted here.

Moreover, with respect to any documents falling within the scope of the investigation – which would include virtually all of the documents sought by plaintiffs, those documents would be exempt from release under FOIA Exemption 7(A), which covers:

records or information compiled for law enforcement purposes, but only to the
extent that the production of such law enforcement records or information (A)
could reasonably be expected to interfere with enforcement proceedings.

5 U.S.C. § 552(b)(7)(A).

Exemption 7(A) applies as long as there is a concrete prospect of a law enforcement

proceeding that could be harmed by a premature release of information.  See NLRB v. Robbins

Tire & Rubber Co., 437 U.S. 214, 232 (1978); Campbell v. HHS, 682 F.2d 256, 259 (D.C. Cir.

1982).  Accordingly, a court will uphold an agency's invocation of Exemption 7(A) if the agency

can show that:  (1) a law enforcement proceeding is pending or prospective, and (2) release of the

information could reasonably be expected to cause some articulable harm.  See Robbins Tire,

437 U.S. at 228-32.  In this case, as set forth in the Durham Declaration, the criminal

investigation and any subsequent indictments or prosecutions would qualify as pending law

enforcement proceedings, and, as discussed above, the search for, processing, and release of the

information contained in the documents would harm that investigation.  As a result, even were

this Court to deny defendant's Motion to Stay, the CIA would assert Exemption 7(A) over the

documents, and, if this Court were to uphold that assertion, plaintiffs still would not receive the

documents before the conclusion of the investigation and any resulting criminal proceedings.[2]

Plaintiffs will not be harmed by a stay of proceedings here.

---

[2] Nor would a blanket assertion of Exemption 7(A) by the defendant resolve the problem.
Under Maydak v. Dep't of Justice, 218 F.3d 760 (D.C. Cir. 2000), the CIA must review and
process all of the documents for all applicable exemptions at the same time, necessitating the
same problems with review by potential witnesses to the investigation that would otherwise
occur.

C.    **Judicial Economy and the Temporary Nature of the Stay Sought Favor A Stay.**

As set forth above, were this Court to deny defendant's Motion for Stay, the CIA would likely invoke Exemption 7(A) over most, if not all, of the documents sought by plaintiffs in their FOIA requests pending the conclusion of law enforcement proceedings.  At that point, unless the plaintiffs conceded the propriety of Exemption 7(A), the parties would have to litigate whether that exemption applied to the documents in question, and this Court would have to decide that issue, likely resulting in the plaintiffs' inability to obtain responsive documents until the conclusion of criminal proceedings in any case.  Once no further possibility of interference with such proceedings existed, however, the Exemption 7(A) issue would be moot, this Court would not have to decide the issue, and the documents (or portions of documents) withheld only under Exemption 7(A) would be released.

Moreover, the time requested for a stay is reasonable.  The duration of the investigation is not indefinite; rather, the criminal investigators estimate, based upon presently available information, that the remainder of the investigatory process will take at least six more months, and, if no indictments are issued at the conclusion of that process, the stay could be lifted at that time.  If indictments and prosecutions were to result from the investigation, the Speedy Trial Act will appropriately expedite a criminal trial.  See St. Paul and Marine Ins. Co., 24 Cl. Ct. at 517.

## CONCLUSION

For the foregoing reasons, the CIA requests that this Court grant a six-month stay, at the conclusion of which the defendant will update the Court on the status of the investigation.

Dated: June 9, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


 /s/ Vesper Mei
VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| and MATTHEW COLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv02306 (RBW) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[DEFENDANT'S PROPOSED]
ORDER GRANTING STAY OF PROCEEDINGS**

Defendant's motion for a six-month stay of proceedings is granted.  The defendant shall

report back to this Court no later than _____ on the status of the

criminal investigation.

SO ORDERED.

Dated: _____        _____
                                      REGGIE B. WALTON
                                      UNITED STATES DISTRICT JUDGE

EXHIBIT A

# The James Madison Project
## 1250 Connecticut Avenue, N.W.
## Suite 200
## Washington, D.C. 20036

(202) 498-0011                                    E-Mail: JaMadPro@aol.com
(202) 330-5610 fax                                http://www.jamesmadisonproject.org

9 December 2007

<u>VIA FACSIMILE AND MAIL</u>

Scott A. Koch
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Re: <u>FOIA Request – Destruction of Interrogation Video Tapes</u>

Dear Mr. Koch:

This is a request on behalf of The James Madison Project under the Freedom of Information Act, 5 U.S.C. § 552, <u>et seq.</u>, for copies of any and all:

(a) records pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri – please refer to the enclosed newspaper articles for spelling variations;

(b) records, including correspondence, created after September 11, 2001, with Members of Congress or its Committees, The 9/11 Commission ("National Commission on Terrorist Attacks Upon the United States") or the Department of Justice about (1) the existence of videotapes of interrogations of terrorist suspects; (2) requests for access to videotapes of interrogations of terrorist suspect; (3) warnings or instructions not to destroy any videotapes of interrogations of terrorist suspect; and/or (4) any investigation into your Agency's destruction of the tapes identified in (a);

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

The James Madison Project

(c) records of interrogatory or document production requests, or any records
discussing CIA responses thereto, received as part of any criminal
prosecutions that sought acknowledgment of the existence and/or copies of
videotape interrogations of terrorist suspects since September 11, 2001;

(d) records of Freedom of Information Act requests received by your Agency
after September 11, 2001, for copies of any records pertaining to videotape
interrogations of terrorist suspects; and

(e) records pertaining to (a) that specifically reflect the identity of the attorney
within your Agency's Office of General Counsel who approved the
destruction of the videotapes and any records setting forth the policy or legal
analysis underlying that conclusion.

You are specifically directed to ensure that searches are conducted of the Office of
General Counsel, Office of Inspector General, Office of Legislative Affairs, and the
National Clandestine Service.

We are hereby requesting a waiver of all fees. The James Madison Project is a non-
profit organization under the laws of the District of Columbia and has the ability to
disseminate information on a wide scale. Stories concerning our activities have received
prominent mention in many publications including, but not limited to, *The Washington
Post, The Washington Times, St. Petersburg Tribune, San Diego Union Tribune,
European Stars & Stripes, Christian Science Monitor, U.S. News and World Report,
Mother Jones* and *Salon Magazine*. Our website, where much of the information received
through our FOIA requests is or will be posted for all to review, can be accessed at
*http://www.jamesmadisonproject.org*. Prior requests submitted by our organization have
all received fee waivers.

We are also asking for expedited processing. The 1996 amendments to the Freedom
of Information Act permit expedited processing when a "compelling need" exists. See
5 U.S.C. § 552 (a)(6)(E)(v). Specifically, "compelling need" means "with respect to a
request made by a person primarily engaged in disseminating information, urgency to
inform the public concerning actual or alleged Federal Government activity." Id. at § 552
(a)(6)(E)(v)(II). The CIA has adopted internal regulations governing expedited
processing and has determined that a "compelling need" is deemed to exist where the
"request is made by a person primarily engaged in disseminating information and the

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors,
must arm themselves with the power knowledge gives."*

*James Madison, 1822*

*The James Madison Project*

information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." See 32 C.F.R. § 1900.34(c)(2).

There can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Over the course of the Global War on Terror ("GWOT"), numerous documents from a host of executive branch agencies have been released, detailing the legal and policy considerations that have formed the basis for discussions on a wide-range of national security policies. One example was the DOJ's disclosure of memoranda that originated in its Office of Legal Counsel and which formed a critical component of U.S. policies concerning detention of terrorist suspects. Given the highly-publicized nature of this particular controversy and its relation to the ongoing dispute over the CIA's "enhanced interrogation techniques", such as water boarding, detailing the span of arguments considered prior to the decision to destroy the tapes and the investigation afterwards will clearly contribute to the public's understanding of government operations or activities.

With respect to expedited processing, as explained above, JMP has been and continues to be primarily engaged in disseminating information on a wide scale and clearly falls within the scope of the statute. A "compelling need" exists due to the critically important political and legal questions that are clearly implicated by the decision to authorize the destruction of these tapes. As has been noted in numerous press reports the CIA claims that the tapes were destroyed because "they were no longer of intelligence value and not relevant to any internal, legislative or judicial inquiries." This conclusion has been disputed by several Members and staff of the 9/11 Commission to include its Co-Chairman Lee Hamilton, its General Counsel Daniel Marcus and its Executive Director Philip Zelikow, all of whom have publicly stated that the tapes would have been relevant and applicable to the Commission's request for materials and that withholding evidence being sought in a fact-finding investigation might have constituted obstruction of justice. The CIA statements have also been challenged by various Members of Congress.

Moreover, the tapes were potentially responsive to at least one court discovery order set down on November 3, 2005 by U.S. District Court Judge Leonie Brinkema in the trial of Zacarias Moussaoui; that order sought confirmation of the existence or non-existence of "video or audio tapes" of Al-Qaeda detainees in U.S. custody and the government denied that it had video or audio tapes of the interrogations. Not only does the destruction of the tapes have the potential to serve, either by appearance or in reality, as evidence of inappropriate or unlawful efforts by the CIA to destroy evidence, but it also raises the

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

*The James Madison Project*

---

possibility of whether the CIA and its officials, particularly those within its Office of General Counsel, knowingly and willingly obstructed justice. It goes without saying that potential criminal actions by the CIA and its officials are "relevant to a subject of public urgency" and therefore satisfy the "compelling need" standard.

The Department of Justice and the CIA's Office of Inspector General have already opened separate inquiries into the destruction of the tapes, and Congressional hearings are likely on the subject as well.

I have enclosed numerous copies of news articles and editorials from *The New York Times*, *The Washington Post*, *Los Angeles Times* and other publications, as well as a list of selected newspaper articles – just as an example – demonstrating the wide-spread world-wide interest in the topic. The topic has, of course, also widely been discussed by television news programs and commentators as well as rampantly throughout the Internet.

The CIA is required by law to respond to this request within 20 working days. However, the CIA is required to issue a determination on the request for expedited processing "within 10 days after the date of the request." 5 U.S.C. § 552 (a)(6)(E)(ii)(I). Therefore, the CIA's response is due on or before December 20, 2007. Failure to timely comply or issue a favorable decision will result in the filing of a civil action against your agency in the United States District Court for the District of Columbia. Please note that the denial of expedited processing should not interfere with the normal processing of these requests.

If you deny all or part of this request, please cite the specific exemptions you believe justifies your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out".

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at either (202) 498-0011 or my law office at (202) 454-2809.

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

The James Madison Project

Finally, please have all return correspondence addressed specifically to my attention to ensure proper delivery.

Sincerely,

Mark S. Zaid
Executive Director

Enclosures

"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."

James Madison, 1822

EXHIBIT B

JAN. 22. 2008 7:05PM
12/27/2007 20:25 2023305610
Case 1:07-cv-02306-RBW  Document 7-4  Filed 06/09/2008  Page 2 of 5
MARKZAID
NO. 2556 P. 2
PAGE 02

# MARK S. ZAID, P.C.
## ATTORNEY-AT-LAW

1250 CONNECTICUT AVENUE, N.W.
SUITE 200
WASHINGTON, DC 20036

TELEPHONE: (202) 454-2809
FACSIMILE: (202) 330-5610

MARK S. ZAID, MANAGING PARTNER
E-MAIL: MARK@MARKZAID.COM
BRADLEY P. MOSS, ASSOCIATE
E-MAIL: BRAD@MARKZAID.COM

December 27, 2007

<u>VIA FACSIMILE AND MAIL</u>

Scott A. Koch
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Dear Mr. Koch:

This is a request on behalf of my client Matthew Cole under the Freedom of Information Act, 5 U.S.C. § 552, et seq., for copies of any and all:

    (a) records pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri – please refer to the enclosed newspaper articles for spelling variations;

    (b) records, including correspondence, created after September 11, 2001, with Members of Congress or its Committees, The 9/11 Commission ("National Commission on Terrorist Attacks Upon the United States") or the Department of Justice about (1) the existence of videotapes of interrogations of terrorist suspects; (2) requests for access to videotapes of interrogations of terrorist suspect; (3) warnings or instructions not to destroy any videotapes of interrogations of terrorist suspect; and/or (4) any investigation into your Agency's destruction of the tapes identified in (a);

    (c) records of interrogatory or document production requests, or any records discussing CIA responses thereto, received as part of any criminal prosecutions that sought acknowledgment of the existence and/or copies of videotape interrogations of terrorist suspects since September 11, 2001;

    (d) records of Freedom of Information Act requests received by your Agency after September 11, 2001, for copies of any records pertaining to videotape interrogations of terrorist suspects; and

(e) records pertaining to (a) that specifically reflect the identity of the attorney within your Agency's Office of General Counsel who approved the destruction of the videotapes and any records setting forth the policy or legal analysis underlying that conclusion.

You are specifically directed to ensure that searches are conducted of the Office of General Counsel, Office of Inspector General, Office of Legislative Affairs, and the National Clandestine Service.

For your information this request specifically incorporates, and is identical to, the December 9, 2007, FOIA request submitted by The James Madison Project, which is now the subject of litigation. James Madison Project v. CIA, Civil Action No. 07-2306 (D.D.C.)(RBW).

Mr. Cole is requesting a waiver of all fees as a "representative of the news media," as well as expedited processing. The 1996 amendments to the Freedom of Information Act permit expedited processing when a "compelling need" exists. See 5 U.S.C. § 552 (a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552 (a)(6)(E)(v)(II). The CIA has adopted internal regulations governing expedited processing and has determined that a "compelling need" is deemed to exist where the requester can demonstrate "the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." See 32 CFR § 1900.34(c).

For your information, Mr. Cole is an investigative journalist who has written for GQ, Wired, Salon and ESPN The Magazine among others. Copies of some of his published work can be found at http://www.matthewacole.com. He is currently writing a book about the CIA for Simon & Schuster. He is a graduate of Columbia University's Graduate School of Journalism.

There can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Over the course of the Global War on Terror ("GWOT"), numerous documents from a host of executive branch agencies have been released, detailing the legal and policy considerations that have formed the basis for discussions on a wide-range of national security policies. One example was the DOJ's disclosure of memoranda that originated in its Office of Legal Counsel and which formed a critical component of U.S. policies concerning detention of terrorist suspects. Given the highly-publicized nature of this particular controversy and its relation to the ongoing dispute over the CIA's "enhanced interrogation techniques", such as water boarding, detailing the span of arguments considered prior to the decision to destroy the tapes and the investigation afterwards will clearly contribute to the public's understanding of government operations or activities.

With respect to expedited processing, as explained above, Mr. Cole is an investigative journalist and clearly falls within the scope of the statute. A "compelling need" exists due to the critically important political and legal questions that are clearly implicated by the decision to authorize the destruction of these tapes. As has been noted in numerous press reports the CIA claims that the tapes were destroyed because "they were no longer of intelligence value and not

2

relevant to any internal, legislative or judicial inquiries." This conclusion has been disputed by several Members and staff of the 9/11 Commission to include its Co-Chairman Lee Hamilton, its General Counsel Daniel Marcus and its Executive Director Philip Zelikow, all of whom have publicly stated that the tapes would have been relevant and applicable to the Commission's request for materials and that withholding evidence being sought in a fact-finding investigation might have constituted obstruction of justice. The CIA statements have also been challenged by various Members of Congress.

Moreover, the tapes were potentially responsive to at least one court discovery order set down on November 3, 2005 by U.S. District Court Judge Leonie Brinkema in the trial of Zacarias Moussaoui; that order sought confirmation of the existence or non-existence of "video or audio tapes" of Al-Qaeda detainees in U.S. custody and the government denied that it had video or audio tapes of the interrogations. Not only does the destruction of the tapes have the potential to serve, either by appearance or in reality, as evidence of inappropriate or unlawful efforts by the CIA to destroy evidence, but it also raises the possibility of whether the CIA and its officials, particularly those within its Office of General Counsel, knowingly and willingly obstructed justice. It goes without saying that potential criminal actions by the CIA and its officials are "relevant to a subject of public urgency" and therefore satisfy the "compelling need" standard.

The Department of Justice and the CIA's Office of Inspector General have already opened separate inquiries into the destruction of the tapes, and Congressional hearings are likely on the subject as well.

I have enclosed numerous copies of news articles and editorials from *The New York Times*, *The Washington Post, Los Angeles Times* and other publications, as well as a list of selected newspaper articles – just as an example – demonstrating the wide-spread world-wide interest in the topic. The topic has, of course, also widely been discussed by television news programs and commentators as well as rampantly throughout the Internet.

The CIA is required by law to respond to this request within 20 working days. However, the CIA is required to issue a determination on the request for expedited processing "within 10 days after the date of the request." 5 U.S.C. § 552 (a)(6)(E)(ii)(I). Therefore, the CIA's response is due on or before January 7, 2008. Failure to timely comply or issue a favorable decision will result in the filing of a civil action against your agency in the United States District Court for the District of Columbia. Please note that the denial of expedited processing should not interfere with the normal processing of these requests.

If you deny all or part of this request, please cite the specific exemptions you believe justifies your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out".

3

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at either (202) 498-0011 or my law office at (202) 454-2809.

Pursuant to 32 CFR § 1900.34, I herby certify the above is true to the best of my knowledge.

Sincerely,

Mark S. Zaid

Enclosures
cc: Matthew Cole

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MATTHEW COLE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv02306 (RBW) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JOHN H. DURHAM

I, John H. Durham, declare as follows:

1.      I am Counsel to the United States Attorney for the District of Connecticut. I have

been employed as a federal prosecutor since December 20, 1982, when I became a Trial Attorney

for the New Haven Field Office of the Boston Strike Force on Organized Crime. I served as the

Strike Force Chief in the District of Connecticut until September 1989. In September 1989, I

became Chief of the Criminal Division for the United States Attorney's Office for the District of

Connecticut and served in that position until March 1994, when I became the Deputy United

States Attorney for the Office.[1] I became Counsel to the United States Attorney in March 2008.

At various times, I have also served as the Interim United States Attorney for the District of

Connecticut, Special Attorney in the District of Massachusetts investigating and prosecuting

corruption involving law enforcement agencies in Massachusetts, and Special Attorney in the

---

[1] In the District of Connecticut, the Deputy United States Attorney is the position
commonly known in other districts as the First Assistant United States Attorney.

Southern District of New York investigating allegations of corruption within a federal law enforcement agency. On January 2, 2008, Attorney General Michael Mukasey appointed me to serve as Acting United States Attorney for the Eastern District of Virginia in connection with a federal criminal investigation into the destruction of certain videotaped interrogations of detainees by the Central Intelligence Agency ("CIA" or "the Agency"). In my capacity as Acting United States Attorney for the Eastern District of Virginia, I am responsible for supervising the investigative efforts of a team of lawyers and Special Agents of the Federal Bureau of Investigation conducting the investigation into the CIA tapes matter.

2.      This declaration is submitted in support of the CIA's motion for a stay of proceedings in the above-captioned civil action due to the pendency of a related criminal investigation. The statements made in this declaration are based on my personal knowledge of the facts and information obtained and reviewed in the course of my official duties.

3.      In connection with the ongoing federal criminal investigation into the destruction of videotapes by the CIA, the following background information is of note:

a)      On December 6, 2007, Michael V. Hayden, Director of the CIA, announced that during the initial stage of the Agency's terrorist detention program, it videotaped interrogations, and in 2005 it destroyed the tapes. Further, Director Hayden stated that the program itself began with the capture of a detainee named Abu Zubaydah in March of 2002, and the decision to videotape interrogations was made by the Agency on its own. Director Hayden further stated that the videotaping of interrogations stopped in 2002. Director Hayden also advised that the decision to destroy the tapes was made only after "they were no longer of intelligence value and not relevant to any internal, legislative, or judicial inquiries – including

2

the trial of Zacarias Moussaoui."

        **b)**      Shortly after the destruction of the videotaped interrogations was made public, Attorney General Mukasey directed that a preliminary inquiry be conducted by the National Security Division of the Department of Justice regarding the destruction of the videotapes.

        **c)**      On January 2, 2008, the Attorney General announced that the preliminary inquiry had been concluded and that there was a basis for initiating a full criminal investigation into the destruction of the tapes. Further, on that same date, as noted above, I was appointed to serve as the Acting United States Attorney for the Eastern District of Virginia to supervise that criminal investigation. Also, as noted, the Federal Bureau of Investigation was designated as the federal law enforcement agency that would conduct the investigation.

        **d)**      Beginning on January 2, 2008, and continuing to the present, a fully-staffed team of prosecutors and agents has been assembled and has been actively gathering information and evidence relating to the destruction of the videotapes in issue.

        **4.**      The questions under active review in this investigation include, *inter alia*, whether any federal criminal offenses were committed in connection with the destruction of the above-referenced videotapes. More specifically, the investigation team is actively reviewing whether any person or persons obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes. With respect to potential obstruction of justice offenses, we are investigating whether the destruction of the videotapes violated any order issued by any federal judicial officer and, if so, what the person or persons' knowledge, motive, and/or intent was in destroying the tapes or causing their destruction.

5.      I understand that the plaintiffs in this case, The James Madison Project and

Matthew Cole ("Plaintiffs"), filed an amended complaint in this Freedom of Information Act

("FOIA") lawsuit on February 1, 2008, seeking documents related to the existence and

destruction of the same videotaped interrogations at issue in the criminal inquiry.

6.      Central questions for the criminal investigation include: who within the federal

government knew of the existence of the videotaped interrogations at issue; who was aware of

the various orders that might have required the preservation of the videotapes; and who was

involved, in any way, in the decision and/or directive to destroy the videotapes. Because

Plaintiffs' FOIA request relates directly to the videotapes of the interrogations and their

destruction, most, if not all, of the documents that the CIA would be required to search for and

review in order to respond to Plaintiffs' FOIA request would be relevant to the investigation.

Many of those documents have already been gathered and the files provided and/or made

available to the criminal investigators for use in the ongoing investigation. In this regard, many

of the individuals who would be involved in the CIA's review of these FOIA materials, for both

a determination of responsiveness and processing purposes, are essential witnesses for the

criminal investigation.

7.      Because the individuals who would be involved in the review of the FOIA

documents are also potential witnesses for the criminal investigation, review of the documents by

such individuals would create the risk that these potential witnesses would be affected by their

access not only to their own documents and records, but those of others, and, as a result of

reviewing those documents, their recollections may be changed with respect to events, or –

inadvertently or advertently – their answers to questions that would be posed by the criminal

4

investigators would be affected.[2]  This exposure to other records and statements would almost certainly occur in the normal course of conducting such search and review.  Indeed, due to these same concerns, I have previously asked the appropriate authorities within the CIA not to show records and documents, or otherwise make certain records and documents available to persons who will be interviewed as witnesses in connection with the criminal investigation being conducted.

8.      The review of the documents that will be necessary to respond to Plaintiffs' FOIA request would also increase the likelihood of public disclosures of information – through leaks, inadvertent discussions, or otherwise – that could negatively impact the ongoing criminal investigation.  In addition, the public disclosure of any documents (or information contained within those documents) through a FOIA release or otherwise, concerning the destruction of evidence could expose witnesses to what may have been said or disclosed to investigators by other potential witnesses and thereby cause potential witnesses, intentionally or otherwise, to change what they have to say so or to conform their testimony to any such publicly disclosed information.

9.      The criminal investigation that I am supervising in my role as Acting United States Attorney for the Eastern District of Virginia is unique in my experience as an Assistant United States Attorney.  The destruction of the videotaped interrogations has brought about legitimate concern on the part of various federal judges, as well as significant Congressional

---

[2] To be clear, the criminal investigators have, to date, interviewed some of the potential witnesses.  Nevertheless, the risks discussed in this paragraph still apply to those witnesses who have not yet been interviewed, as well as to those witnesses whom the criminal investigators may need to re-interview at a later juncture and/or subpoena to the grand jury.

interest. For example, as has been publicly reported, United States District Judge Henry H.

Kennedy has been asked to investigate the matter by the petitioners in *Mahmoad Abdah, et al. v.*

*Bush, et al.,* Civil No. 04-1254 (HHK) (D.D.C). Similarly, the petitioners in *ACLU, et al. v.*

*Department of Defense*, No. 04CV4151 (AKH) (S.D.N.Y.) have asked Judge Alvin K.

Hellerstein to investigate the matter, and the court has expressed concerns regarding the

destruction of the tapes.[3] Beyond these specific expressions of concern, there is a compelling

national interest in ensuring that this criminal investigation is conducted in a manner that will

engender public trust in its outcome. It is my belief that requiring the CIA to proceed with the

search for and processing of documents responsive to Plaintiffs' FOIA request at this time will

interfere with the ability to conduct a complete, thorough, and untainted federal criminal

investigation into the destruction of videotaped interrogations. Such interference could in turn

jeopardize the successful prosecution of any criminal case brought against any individuals who

were found to have violated federal law in connection with the destruction of these tapes.

Clearly, the public interest in an unfettered criminal investigation must be balanced against the

Plaintiffs' interest in the speedy resolution of their request. I respectfully submit that a temporary

stay of this proceeding will strike the proper balance by avoiding any unnecessary interference

with the criminal investigation without unduly delaying the resolution of the Plaintiffs' request.

10.    My concerns about the integrity of the instant criminal investigation, together with

the highly classified nature of much of the information in this investigation, make me reluctant to

provide further details concerning how this criminal investigation is being conducted and the

---

[3] Along these same lines, the House Permanent Select Committee on Intelligence, the
Senate Select Committee on Intelligence, and the Judiciary Committees in both Houses of
Congress have initiated their own investigations into the destruction of the videotapes.

impact on any potential prosecutions if the inquiry that will be necessary to comply with

gathering and processing of the documents responsive to Plaintiffs' FOIA request must go

forward at this time.  Nonetheless, should the Court require further information concerning

whether to grant a stay in these matters, further information could be disclosed *ex parte* and *in

camera.*

      11.     Because of the foregoing concerns, I request that the defendant in this lawsuit seek

a temporary stay of this civil proceeding until such time as the criminal investigative process is

complete, a process that I estimate – based upon presently available information – will take at

least six more months.  If indictments and criminal prosecutions were to result from the

investigation, I would request that the defendant seek a further stay of this proceeding until the

conclusion of the criminal proceedings.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed on June 9, 2008.

JOHN H. DURHAM