## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT et al.     *
                                     *
        Plaintiffs,                  *
                                     *
        v.                           *        Civil Action No. 07-02306 (RBW)
                                     *
CENTRAL INTELLIGENCE AGENCY          *
                                     *
        Defendant.                   *
                                     *
*    *    *    *    *    *    *    *    *    *    *    *

## OPPOSITION TO DEFENDANT'S MOTION
## FOR A STAY OF PROCEEDINGS

Plaintiffs The James Madison Project and Matthew Cole (collectively referred to as "JMP") brought this Freedom of Information Act ("FOIA") action against defendant Central Intelligence Agency ("CIA"), seeking expedited processing and the release of records pertaining to the 2005 destruction of videotapes by the CIA. The videotapes contained the interrogations of terrorists Zayn Abidin Muhammed Hussain Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri, as well as other suspected terrorists. Their destruction was made public on December 6, 2007, by way of an announcement by CIA Director Michael V. Hayden.

The CIA, in an attempt to deliberately forestall this litigation for a potentially excessively-broad period of time, is seeking a stay from this Court until – at a minimum – the Department of Justice's criminal investigation into the conduct of relevant CIA officials has been completed, as well as any subsequent – if ever – criminal proceedings. As this request is a blatantly inappropriate attempt to circumvent the statutory remedies of FOIA the CIA's Motion should be denied and it should be required to disclose all responsive records or justify their withholding.

## PROCEDURAL BACKGROUND

The original complaint in this action was filed by the James Madison Project on December 21, 2007. On January 25, 2008, a First Amended Complaint was filed adding Matthew Cole as a plaintiff..

The CIA filed its answer on February 19, 2008. On June 9, 2008, the CIA filed this Motion for a Stay of Proceedings.

## ARGUMENT

The CIA offers both a procedural argument and a three-part substantive argument to justify this stay request. The procedural argument states that civil actions relating to a pending criminal investigation are commonly stayed in order to avoid compromising a criminal investigation, regardless of whether an indictment has been issued. Defendant's Memorandum in Support of Motion for a Stay of Proceedings  at 4-6 (filed June 9, 2008)("CIA's Memo"). Relying upon that argument, the CIA argues that: (1) the pending criminal action could be harmed if the FOIA case proceeded; (2) the stay would not create a hardship for JMP; and (3) judicial economy and the temporary nature of the stay favors a stay. Id. at 6-11. For the reasons stated below, these arguments are without merit and fail to demonstrate that a balancing of the circumstances warrants the issuance of a stay.

**I.  THE CIA HAS MISCONSTRUED THE EXTENT TO WHICH THE D.C. CIRCUIT HAS HELD THAT IT WILL STAY CIVIL PROCEEDINGS ABSENT AN INDICTMENT IN THE CRIMINAL PROCEEDINGS.**

The current state of the law within the D.C. Circuit remains that the Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. See SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980),

citing <u>Baxter v. Palmigiano</u>, 425 U.S. 308 (1976). While courts admittedly retain the discretionary authority to issue such a stay, the decision to exercise that authority is dependent upon the particular circumstances of the case. <u>Dresser</u>, 628 F.2d at 1375. <u>See also</u> <u>Landis v. North American Co.</u>, 299 U.S. 248, 255 (1936)(the movant party "must make out a *clear case of hardship* or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else")(emphasis added); <u>Dresser</u>, 628 F.2d at 1375-76 ("[T]he strongest case for deferring civil proceedings until after completion of criminal proceedings is *where a party under indictment* for a serious offense is required to defend a civil or administrative action involving the same matter.")(emphasis added). The mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceedings, does not establish the requisite good cause for a stay. <u>Horn v. District of Columbia</u>, 210 F.R.D. 13, 15 (D.D.C. 2002).

The lack of a criminal indictment is most assuredly a factor that weighs against any argument in favor of a stay of civil proceedings. <u>See</u> <u>Dresser</u>, 628 F.2d at 1376 (finding argument in favor of stay weaker due to absence of criminal indictment). <u>See also</u> <u>Brock v. Tolkow</u>, 109 F.R.D. 116, 120 n.2 (E.D.N.Y. 1985)(that indictment had not been issued viable consideration counseling against stay of proceedings). Indeed, the CIA cited to only one case in which the court granted a stay in the absence of a criminal indictment. CIA's Memo at 5, <u>citing</u> <u>Capital Engineering & Manufacturing Co. Inc. v. Weinberger</u>, 695 F. Supp. 36, 41-42 (D.D.C. 1988).[1]

---

[1] As an example of the novelty of the CIA's arguments, especially in the context of a FOIA lawsuit, it relies heavily upon non-binding case law to justify its argument. <u>See</u> CIA's Memo at 5 fn.1.

In fact, the Court's decision to stay the civil proceedings in <u>Capital Engineering</u> came *after* it had denied the government's initial Motion to Dismiss in order to stay discovery. In that case the pending criminal investigation actually involved the very same plaintiff who had brought the civil action. <u>Id</u>. at 40. The District Court was clear in concluding that the government had "raised a meritorious concern as to the *timing* of plaintiff's discovery" and exercised its discretionary authority to stay discovery in order to prevent the plaintiff "from availing themselves of liberal civil discovery rules in order to circumvent the more restrictive guidelines governing criminal discovery". <u>Id</u>. at 41 (emphasis in original). Such circumstances could not be more distinguishable from the case at bar, in which the CIA has yet to even file a dispositive motion justifying its withholdings or the adequacy of its search, nor for that matter are the plaintiffs parties to the criminal investigation or will ever be.

Furthermore, it is far from necessary to suspend all proceedings in a civil case – particularly one still in its infancy – due to its mere relation to a pending criminal investigation. The Supreme Court devised a limited approach meant to address such a problem, particularly where compliance with discovery requests by an opposing party would subject the other party to a "real and appreciable risk of self-incrimination". <u>United States v. Kordel</u>, 397 U.S. 1, 8-9 (1970)(recognizing that, in such a circumstance, protective order suspending civil discovery until termination of criminal action would be appropriate).[2] <u>See also</u> <u>Dellinger v. Mitchell</u>, 442 F.2d 782, 787 (D.C. Cir. 1971)("Where related civil and criminal litigations are pending at the same time, sound discretion of the

---

[2] The CIA failed to identify any binding case law justifying its argument that proceedings in a civil case must be suspended in order to protect a pending criminal investigation. <u>See</u> CIA's Memo at 5.

court may require that the civil action not be blocked entirely but be subject to some

limitation, including, e.g., protective orders pertinent to discovery, to avoid essential

unfairness or other interference with the public interest."); Gordon v. Federal Deposit Ins.

Corp., 427 F.2d 578, 580 (D.C. Cir. 1970)(even if civil case not stayed, protective order

to prevent discovery viable potential option); Capital Engineering, 695 F. Supp. at 41

(narrowing "range of discovery so as not to impinge upon the criminal proceedings"

viable option). The fact that a protective order might ultimately be appropriate, though,

does not justify a total stay of proceedings. Dellinger, 442 F.2d at 787.

In the present case, the CIA has yet to even file a dispositive motion in order to

withhold records responsive to JMP's FOIA request.[3] The CIA fails to articulate any

sound reason why the viability of any potentially applicable FOIA exemptions, especially

that of Exemption 7(a), could not be litigated rather than a stay being imposed.

Declaration of Mark S. Zaid, Esq. at ¶¶9-12 (dated July 21, 2008)("Zaid Decl."), attached

as Exhibit "1". Therefore, the CIA's Motion should be denied and the CIA should be

ordered to release all responsive records and/or timely file a dispositive motion

addressing its invocation of FOIA Exemption 7(a), as well as any other allegedly-

appropriate FOIA exemption.

---

[3] As explained in greater detail below, the CIA readily admits that, absent a stay, it will file a dispositive motion invoking FOIA Exemption 7(a) to withhold all responsive records. See CIA's Memo at 10. Ironically, this case is one of the incredibly rare circumstances where the CIA has granted expedited processing for a requester. See Exhibit "1-A". See also CIA Freedom of Information Act Annual Report Fiscal Year 2007 at 8 (noting of 127 requests for expedited processing filed between FY 2004 – 2007, only one was granted)(a copy of the report can be found at *http://www.foia.cia.gov/txt/ Annual_Report_2007.pdf*)

## II. THE CIA HAS FAILED TO DEMONSTRATE THAT THE CURRENT CIRCUMSTANCES SUPPORT THE ISSUANCE OF A STAY

Even if it is determined that a stay of all civil proceedings should even be entertained, the CIA has not demonstrated that a stay is warranted. A party seeking a stay needs to satisfy the following standard: (1) make a clear showing, by direct or indirect proof, that the issues in the civil action are "related" as well as "substantially similar" to the issues in the criminal investigation; (2) make a clear showing of hardship or inequality if required to go forward with the civil case while the criminal investigation is pending; and (3) must establish that the duration of the requested stay is not immoderate or unreasonable. Horn, 210 F.R.D. at 15. The underlying necessity for this standard is simple, namely that it is an abuse of discretion for a district court to grant a stay of "*indefinite duration in absence of a pressing need*". Feld Entertainment, Inc. v. ASPCA, 523 F. Supp. 2d 1, 5 (D.D.C. 2007)(emphasis added).

The CIA argues that it has satisfied this standard and demonstrated that the circumstances warrant the issuance of a stay. CIA's Memo at 6-11. As will be demonstrated below, this argument is without merit. Accordingly, the CIA's Motion should be denied and the CIA should be ordered to expeditiously release all responsive records and thereafter timely file a dispositive motion to justify any challenged withholdings.

### A.    The Durham Declaration Does Not Sufficiently Demonstrate That The Criminal Investigation Would Be Harmed By The Civil FOIA Action

The burden rests upon the movant party to demonstrate that the parallel criminal proceedings warrant a finding that the issues in the civil proceedings are "related" and "substantially" similar. See Horn, 210 F.R.D. at 15-16. Moreover, as the CIA readily

admits, the key issue is the risk of prejudice to the criminal investigation. CIA's Memo at 6. See also Dresser, 628 F.2d at 1374 ("In the absence of *substantial prejudice* to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.")(emphasis added).

The CIA, by way of the Declaration of John H. Durham (dated June 9, 2008)("Durham Declaration"), who is currently handling the criminal investigation into the actual destruction of the videotapes, argues that each of the five categories of documents sought by JMP's FOIA request relate directly to the destruction of the videotapes and therefore substantially overlap with the ongoing federal criminal investigation. The CIA notes that the criminal investigation is broad, "essentially looking into all aspects of the destruction of the videotapes interrogations, including whether anyone obstructed justice, made false statements, or acted in contempt of court or Congress in connection with the destruction of the videotapes." Id. at ¶4. The CIA also argues that "because the review and processing of the documents potentially responsive to plaintiffs' FOIA requests will be done by individuals who are potential (and essential) witnesses in the interrogation, such review and processing could well prejudice the criminal investigation by causing these witnesses to, unintentionally or intentionally, change their testimony to conform their version of events to the documents. Id. at ¶7. In light of that, the CIA argues that the circumstances warrant a stay. CIA's Memo at 7.

The Durham Declaration, for its part, is insufficient for purposes of demonstrating either the extent to which the two proceedings are "substantially similar" or, for that matter, there will be "substantial prejudice" to the rights of the parties involved in the criminal investigation. It relies largely upon generic, boilerplate statements detailing the

similarity of the proceedings and the potential prejudicial risk that the present case poses

to the criminal investigation, ultimately relying upon the assertion that the "highly

classified nature of much of the information in this investigation" cautions against

divulging further any details regarding the prejudicial risks posed by this civil action. See

Durham Decl. at ¶¶6-10. These vague statements fail to provide sufficient context within

which to identify the extent that: (1) the individuals responsible for reviewing the records

responsive to JMP's FOIA request would be "potential" or "essential" witnesses in the

criminal investigation; (2) such review and processing could – or more specifically,

would – cause witnesses to change their testimony; (3) the likelihood of public

disclosures would arguably be increased due to the processing of the FOIA request –

excluding the issue of actual documents being disclosed to JMP. This failure undermines

any argument that the CIA has sufficiently satisfied the first prong of the standard.

Additionally, the Durham Declaration provides negligible factual context in asserting

that many of the individuals who would review responsive records are "essential"

witnesses in the criminal investigation and that exposing these witnesses to records

responsive to JMP's FOIA request could arguably affect the answers they would

subsequently provide to criminal investigators. Id. at ¶¶6-7. Without at least some form

of supplemental information on these particular individuals and why they would be

involved in both proceedings,[4] this Court is deprived of any context in which to assess

---

[4] JMP is not necessarily arguing that actual names or job titles would need to be
disclosed. However, supplemental information regarding why these particular individuals
referenced by the CIA would be both involved in the processing of JMP's FOIA request
as well as potential witnesses in the criminal investigation can be provided to this Court
without undermining the integrity of the criminal investigation. This is a particularly
relevant question as thousands of pages of responsive records have already been

(Continued…)

whether the particular individuals would, in fact, be involved in both the present civil

FOIA action and the criminal proceedings, as well as whether other individuals within

particular offices and/or divisions of the CIA could fill this role for purposes of this

present case.[5] In effect, the Durham Declaration is arguing that entire offices and/or

divisions of CIA employees are considered "essential" witnesses, and therefore <u>nobody</u>

could be permitted to review the records due to their need to participate with the criminal

investigation.[6] To say the least, this argument is insufficient and without merit, especially

since the CIA has already identified thousands of relevant pages without any apparent

harm to the criminal investigation. <u>See</u> Exhibit "1-B".

---

(…Continued)
identified and processing has begun. Exhibit "1-B". At a minimum, the CIA should
provide to this Court a supplemental *in camera* affidavit that addresses the factual
deficiencies identified by JMP and demonstrates, to this Court's satisfaction, that the
individuals responsible for processing JMP's FOIA request are "potential" and/or
"essential" witnesses in the criminal investigation. The CIA, for its part, recognizes that
such a filing may be necessary, <u>see</u> Durham Decl. at ¶10, and JMP strongly urges that it
be provided to this Court. Should the CIA pursue this path, and following the completion
of the investigation or the conclusion of any criminal prosecution, JMP will seek review
by this Court to ensure the CIA's response did not amount to perjury and a determination
as to whether its Motion to Stay was frivolously filed and deserving of sanctions pursuant
to Rule 11.

[5] Ironically, this option would in effect constitute the same type of "substitution of
personnel" that the Department of Justice is utilizing in conducting the criminal
investigation. As the Durham Declaration itself recognizes, Mr. Durham is serving as the
United States Attorney for the Eastern District of Virginia solely in an "Acting" capacity
in place of the actual United States Attorney, Chuck Rosenberg. <u>Id</u>. at ¶1.

[6] Given that the CIA admits that many, if not most, of the documents in question have
already been identified for purposes of the criminal investigation, <u>id</u>. at ¶6, it remains
unclear what role, if any, non-FOIA personnel would have at this point in processing
JMP's FOIA request. Determinations relating to responsiveness and classification are
handled exclusively by FOIA personnel, none of whom could arguably be considered as
"potential" witnesses in the criminal investigation. Zaid Decl. at ¶12.

Furthermore, the Durham Declaration does not provide any contextual information justifying its unsubstantiated assertion that processing JMP's FOIA request would somehow increase the likelihood of public disclosure of information – by way of leaks or inadvertent discussions – that could negatively impact the criminal investigation. See Durham Decl. at ¶8. The CIA has failed to provide this Court with any factual basis upon which to evaluate the likelihood of this occurring, and is in effect arguing that CIA employees are somehow more likely to divulge this information to the public than the DOJ employees who have been working and continue to work on the criminal investigation. The Durham Declaration's virtual silence on this issue is most telling and further undermines the CIA's argument that permitting the present civil FOIA action to continue would be "substantially" prejudicial to the parties involved in the criminal investigation.

Given the insufficiency of the Durham Declaration, the CIA has failed to make a "clear showing" that the issues are "substantially similar" and that denying the stay would result in substantial prejudice.

**B.      The CIA Has Failed To Make A Clear Showing Of Hardship If The Stay Is Not Granted**

The D.C. Circuit's underlying rationale behind its view that – absent "special circumstances" involving "substantial prejudice" – the courts should not block parallel civil and criminal proceedings is simple, namely that efficient enforcement of the law may require simultaneous proceedings. See Dresser, 628 F.2d at 1377. The CIA, though, seems to argue that it can demonstrate the existence of "special circumstances" by way of the mere assertion that "the public's interest in the integrity of the criminal investigation, however, takes priority over the plaintiffs' interest in disseminating information (even to

the public) that would squarely implicate the integrity of the investigation, and, to the extent that plaintiffs' FOIA requests are made in the public interest, that interest will be vindicated through the criminal investigation (and any subsequent release of documents in this FOIA case or otherwise". CIA's Memo at 9. As far as the CIA is concerned, public policy gives "priority to the public interest in law enforcement". Id.[7]

This assertion, however, lies in conflict with the law of this Circuit. See Linde Thomson Langworhty Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d 1508, 1518 (D.C. Cir. 1993)(rejecting the argument that the commencement of one proceeding was rendered moot by an arguably "supervening" parallel proceeding when the statute authorizing the former proceeding did not contain any restrictions on its authority). See also Dresser, 628 F.2d at 1378-79 (concluding SEC retained full powers of investigation under pertinent statute even after parallel criminal proceeding underway).[8] On its own, the public's interest in the "integrity of the criminal investigation" fails to constitute a "special circumstance" sufficient to satisfy the Linde Thomson standard, as it would have

---

[7] Of course, the very purpose of FOIA is to benefit the public's interest, and cases such as this are clearly designed to effectuate that purpose. NARA v. Favish, 541 U.S. 157, 171-72, reh'g denied, 541 U.S. 1057 (2004)(emphasizing that the FOIA's underlying purpose of allowing "citizens to know 'what their government is up to'" is "a structural necessity in a real democracy", quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

[8] Moreover, the public interest in the flow of information is just as strong when the source of information is an individual, as opposed to a law enforcement agency. See Founding Church of Scientology of Washington, D.C., Inc. v. Director, 1985 U.S. Dist. LEXIS 22267, *10 (D.D.C. February 26, 1985).

no prohibitive effect on the otherwise unrestricted authority vested within the FOIA. The CIA, for its part, has failed to cite to a single binding case that states otherwise.[9]

FOIA Exemption 7(a) could, if invoked, arguably constitute a restriction on FOIA that would in fact constitute a "special circumstance", particularly in light of the fact that the exemption prohibits disclosure otherwise permissible under the FOIA.[10] The CIA, albeit in an indirect manner, does address the relevance of FOIA Exemption 7(a), namely that it applies "as long as there is a concrete prospect of a law enforcement proceeding that could be harmed by a premature release of information". CIA's Memo at 10. See also NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 228-32 (1978)(exemption applicable if agency can show that law enforcement proceeding is pending or prospective and release of information could reasonably be expected to cause some articulatable harm).

The CIA notes that the current criminal investigation, as well as any subsequent indictments or prosecutions, would qualify as a pending law enforcement proceedings, and that disclosure of information in the responsive records would harm the investigation. CIA's Memo at 10. Strangely enough, while admitting that it has not yet formally invoked the exemption, the CIA asserts that, if this Motion is denied, it will invoke Exemption 7(a) over all of the responsive records anyways, and ultimately disclosure to

---

[9] With all due respect to the statements and rulings by courts in other districts and circuits upon which the CIA has chosen to rely exclusively, see CIA's Memo at 9, they are at best informative and lack any binding effect on the present case. More importantly, not one of the cases pertains to a stay of FOIA proceedings.

[10] Exemption 7(a) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings". 5 U.S.C. § 552(a)(b)(7).

JMP will still not be permitted until after the conclusion of the criminal proceedings. Id. With that in mind, the CIA argues that JMP will not be harmed by a stay of the present case. Id. This argument then renders this current Motion completely disingenuous and reflects the fact that it is nothing but a delay tactic to further string out these proceedings as well as to create unnecessary work for the plaintiffs and this Court. If the CIA genuinely believed that an appropriate FOIA exemption existed that would, as it states, accomplish the same objective as this Motion, then why not invoke the exemption outright rather than have the parties dance this dance?[11]

That said, the plaintiffs are not yet faced with having to address Exemption 7(a). Therefore, under the present circumstances, the CIA has misconstrued the nature of the burden of persuasion pertaining to a motion for a stay of proceedings. The burden is on the CIA, not JMP, to "make a clear showing of hardship or inequality" if the stay is not granted. See Horn, 210 F.R.D. at 15. See also Id. at 16 (finding that a claim of "likely interference" falls short of demonstrating a "clear showing of hardship or inequality"). JMP, for its part, is not required to identify any harm that it will incur if the stay is granted, but rather only has to demonstrate that the CIA has failed to meet its burden of persuasion in support of granting the stay. The fact that this Court may ultimately uphold the CIA's prospective invocation of Exemption 7(a) has no bearing or relevance on the

_____

[11] Indeed, as late as March 2008, the CIA was seeking to negotiate a processing and release schedule of six months. It was not until June 2008, a full six months after the CIA received the relevant FOIA requests and significant processing had begun, that a stay was sought. Exhibit "1-B".

issue of whether, for purposes of this Motion, the CIA has made a clear showing of hardship that will occur in the absence of a stay.[12]

Given the insufficiency of its arguments and its misconstruction of the burden of persuasion, the CIA has failed to make a "clear showing of hardship" and therefore failed to satisfy the second prong of the test.

### C.    The CIA Has Failed To Demonstrate That The Nature Of The Stay Is Temporary Or Reasonable

The Supreme Court has held, and the D.C. Circuit has affirmed, that "in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." Landis, 299 U.S. at 256. See also Dellinger, 442 F.2d at 787 (rejecting motion for stay of proceedings after considering both duration of stay and scope). The burden rests upon the movant party, though, to demonstrate that the duration and scope of the stay are not immoderate or unreasonable. Horn, 210 F.R.D. at 15.

The CIA largely sidesteps the issue of whether the scope of the stay – the halting of all proceedings in the present case prior to the filing of a single dispositive motion – is reasonable, instead it focuses on two other issues of questionable relevance. First, the CIA once again notes that even if its Motion is denied, it will subsequently invoke FOIA

---

[12] The CIA's assertion that, pursuant to Maydak v. Dep't of Justice, 218 F.3d 760 (D.C. Cir. 2000), a blanket invocation of FOIA Exemption 7(a) would still require the review and process all responsive records and, therefore, encounter the "same problems" of potential witnesses reviewing records that will undermine the integrity of the criminal investigation, similarly has no relevance here. If this Court chooses to deny the CIA's Motion, then the CIA has failed to demonstrate to this Court that merely reviewing and processing the records will undermine the integrity of the criminal investigation to such an extent that a stay is warranted to halt the present case's proceedings in its infancy.

Exemption 7(a) over most, if not all, of the responsive records and that the applicability

of the exemption would subsequently have to be litigated. CIA's Memo at 11.[13] Needless

to say, the CIA's argument misses the point. Regardless of whether the applicability of

FOIA Exemption 7(a) is subsequently litigated, possibly even in the CIA's favor, it has

no bearing or relevance on the immediate issue before this Court of whether the scope of

the stay sought by the CIA is reasonable. Indeed, the CIA has failed to provide any

support for the notion that the scope of the stay is in fact reasonable. In light of the law of

this Circuit, something which JMP has previously referenced, halting the proceedings of

the case at bar while they are still in their infancy is not reasonable. See Dellinger,

442 F.2d at 787.

　　　Second, almost in the form of a teaser, the CIA notes that once the criminal

investigation has concluded, all Exemption 7(a) concerns will be moot and the documents

withheld under the exemption – likely all of the responsive records – would be released.

See CIA's Memo at 11. This constitutes the very definition of a "red herring", suggesting

that all that stands in the way of disclosure are the CIA's Exemption 7(a) concerns.

Reality, however, paints a far different picture, as there are several other exemptions that

would arguably be invoked as well. As a general rule, an agency can not invoke

exemptions piecemeal but rather must assert all exemptions at the same time, in the

original district court proceedings. See Maydak, 218 F.3d at 764-65. See also Ryan v.

Dep't of Justice, 617 F.2d 781, 792 (D.C. Cir. 1980)("The danger of permitting the

Government to raise its FOIA exemption claims one at a time, at different stages of a

---

[13] Given that JMP's counsel specifically suggested to the CIA's counsel months ago that
the parties litigate this very issue immediately and avoid protracted administrative delay,
see Exhibit "1-B", JMP has no objection to this course of action, although it obviously
disputes the CIA's assertion that JMP will fail to succeed on the merits.

district court proceeding, is especially apparent in this case, where any delay through this means could easily render the appellants' claim futile.").

At a minimum, it is reasonably likely that the CIA will also attempt to invoke Exemptions 1, 3 and 5 over a large swath of the responsive records, either redacting portions of records or withholding records in their entirety. Given that the scope of the request was for records pertaining to videotapes of interrogations of two highly infamous terrorists, the CIA will likely deem a great deal of information in the responsive records to be classified and thereby within the scope of Exemption 1. Knowing full well the CIA's oft-held reliance upon Exemption 3 by way of the National Security Act of 1947 and CIA Act of 1949 to prevent disclosure of "intelligence sources and methods", JMP can confidently argue that it is reasonably likely that the CIA will seek to exempt additional swaths of information under this exemption. Furthermore, given that it has been well reported that there were discussions amongst agency officials, including legal counsel, regarding the legal authority to destroy the videotapes, it is reasonably certain that the CIA will seek to withhold information by way of evidentiary privileges under Exemption 5.

Lastly, even if the benefit of the doubt is afforded to the estimate by the criminal investigators that the investigation itself will only last another six months, see CIA's Memo at 11, and, as a best case scenario procedure-wise, the investigators do not choose to issue any criminal indictments, the CIA has still failed to demonstrate that both the duration and scope of the stay are moderate and reasonable. Needless to say, if indeed criminal indictments are issued, the delays will mount. Although the Speedy Trial Act will arguably expedite a criminal trial, without knowing how many different trials will be

necessary or how many appeals will have to be considered, it remains unknown exactly

how long the criminal proceedings could last, even arguably stretching into multiple

years.

Therefore, the CIA has not demonstrated that the duration and scope of the stay is

reasonable and has failed to satisfy the third and final prong.

## **CONCLUSION**

For all the foregoing reasons, Defendant's Motion for a Stay of Proceedings should

be denied.

Date:   July 21, 2008

Respectfully submitted,

/s/
_____

Mark S. Zaid, Esq.
DC Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

# EXHIBIT "1"

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT et al. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 07-02306 (RBW) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DECLARATION OF MARK S. ZAID, ESQ.

I, MARK S. ZAID, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.   I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of the plaintiff's Opposition to Defendant's Motion for a Stay of Proceedings (filed June 9, 2008).

2.   I am the Executive Director of the plaintiff James Madison Project ("JMP") and have served in that position since I founded the organization in 1998. JMP is a Washington, D.C.-based non-profit organization created for the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. Much of the work undertaken by JMP involves litigation under disclosure acts such as the Freedom of Information Act ("FOIA"). The principles underlying the objectives of the JMP are derived from the 1997 findings of The Commission on Protecting and Reducing Government Secrecy. Our website, which contains further information and examples of JMP's activities, can be viewed at *www.JamesMadisonProject.org*.

3.  I am also an attorney of record in this litigation for the plaintiffs. I am admitted to practice law in the States of New York, Connecticut, Maryland and the District of Columbia, as well as the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and the United States District Courts for the District of Columbia, Maryland, Eastern District of New York, Northern District of New York, the Southern District of New York and the Court of Claims. I have been litigating FOIA cases since 1993. I have been teaching the D.C. Bar Associations CLE courses on FOIA since 2003, and I have been the co-editor of LITIGATION UNDER THE FEDERAL OPEN GOVERNMENT LAWS since 2002.

**Procedural Background**

4.  By letter dated December 9, 2007, I submitted to the Central Intelligence Agency ("CIA") on behalf of JMP a FOIA request which sought copies of all:

> (a)  records pertaining to the 2005 destruction of videotapes of the interrogations of Zayn Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim al-Nashiri – please refer to the enclosed newspaper articles for spelling variations;

> (b)  records, including correspondence, created after September 11, 2001, with Members of Congress or its Committees, The 9/11 Commission ("National Commission on Terrorist Attacks Upon the United States") or the Department of Justice about (1) the existence of videotapes of interrogations of terrorist suspects; (2) requests for access to videotapes of interrogations of terrorist suspect; (3) warnings or instructions not to destroy any videotapes of interrogations of terrorist suspect; and/or (4) any investigation into your Agency's destruction of the tapes identified in (a);

> (c)  records of interrogatory or document production requests, or any records discussing CIA responses thereto, received as part of any criminal prosecutions that sought acknowledgment of the existence and/or copies of videotape interrogations of terrorist suspects since September 11, 2001;

(d) records of Freedom of Information Act requests received by your Agency after September 11, 2001, for copies of any records pertaining to videotape interrogations of terrorist suspects; and

(e) records pertaining to (a) that specifically reflect the identity of the attorney within your Agency's Office of General Counsel who approved the destruction of the videotapes and any records setting forth the policy or legal analysis underlying that conclusion.

5. The request sought both a fee waiver and expedited processing. By letter dated December 19, 2007, the CIA waived any associated fees surrounding this request but denied JMP's request for expedited processing. This lawsuit was filed on December 21, 2007, to initially challenge the CIA's denial of expedited processing.

6. On December 27, 2007, I filed, as counsel, an identical FOIA request on behalf of plaintiff Matthew Cole, a journalist. This request similarly sought a fee waiver and expedited processing. By letter dated January 11, 2008, the CIA waived any associated fees surrounding this request and granted Mr. Cole expedited processing. Exhibit "A".

7. On February 1, 2008, a First Amended Complaint was filed adding Mr. Cole as a plaintiff, as well as substantively challenging the CIA's failure to disclose responsive records.

8. From January 22, 2008 to March 7, 2008, I conversed via e-mail with Vesper Mei, the Department of Justice attorney representing the CIA, in an effort to negotiate a release schedule. Exhibit "B". I was notified that the CIA would be able to review and release all nonexempt documents within six months, although it would likely invoke FOIA Exemption 7(a) to withhold records. Id. Then suddenly, on June 9, 2008, I was notified that the CIA will seek a stay of proceedings, which led to the filing of this current Motion. Id.

**Substantive Response**

9.   The CIA relies on the Declaration of John H. Dunham, Counsel for the U.S.

Attorney, District of Connecticut and Acting U.S. Attorney for the Eastern District of

Virginia (dated June 9, 2008)("Dunham Decl.") to support its Motion for a Stay of

Proceedings.

10. Mr. Durham, who is currently handling the criminal investigation into the actual

destruction of the videotapes, argues that each of the five categories of documents sought

by JMP and Mr. Cole's FOIA requests relate directly to the destruction of the videotapes

and therefore substantially overlap with the ongoing federal criminal investigation. The

CIA notes that the criminal investigation is broad, "essentially looking into all aspects of

the destruction of the videotapes interrogations, including whether anyone obstructed

justice, made false statements, or acted in contempt of court or Congress in connection

with the destruction of the videotapes." Id. at ¶4. The CIA also argues that "because the

review and processing of the documents potentially responsive to plaintiffs' FOIA

requests will be done by individuals who are potential (and essential) witnesses in the

interrogation, such review and processing could well prejudice the criminal investigation

by causing these witnesses to, unintentionally or intentionally, change their testimony to

conform their version of events to the documents. Id. at ¶7. In light of that, the CIA

argues that the circumstances warrant a stay.

11. Mr. Durham's declaration relies largely upon generic, boilerplate statements

detailing the similarity of the proceedings and the potential prejudicial risk that the

present case poses to the criminal investigation, ultimately relying upon the assertion that

the "highly classified nature of much of the information in this investigation" cautions

against divulging further any details regarding the prejudicial risks posed by this civil action. Id. at ¶¶6-10. These vague statements fail to provide sufficient context within which to identify the extent that: (1) the individuals responsible for reviewing the records responsive to the FOIA requests would be "potential" or "essential" witnesses in the criminal investigation; (2) such review and processing could – or more specifically, would – cause witnesses to change their testimony; (3) the likelihood of public disclosures would arguably be increased due to the processing of the FOIA request – excluding the issue of actual documents that might be disclosed.

12. Additionally, the Durham Declaration provides negligible factual context in asserting that many of the individuals who would review responsive records are "essential" witnesses in the criminal investigation and that exposing these witnesses to records responsive to JMP's FOIA request could arguably affect the answers they would subsequently provide to criminal investigators. Id. at ¶¶6-7. Without at least some form of supplemental information on these particular individuals and why they would be involved in both proceedings, this Court is deprived of any context in which to assess whether the particular individuals would, in fact, be involved in both the present civil FOIA action and the criminal proceedings, as well as whether other individuals within particular offices and/or divisions of the CIA could fill this role for purposes of this present case. In effect, the Durham Declaration is arguing that entire offices and/or divisions of CIA employees are considered "essential" witnesses, and therefore nobody could be permitted to review the records due to their need to participate with the criminal investigation. Given that the CIA admits that many, if not most, of the documents in question have already been identified for purposes of the criminal investigation, id. at ¶6, it remains

unclear what role, if any, non-FOIA personnel would have at this point in processing JMP's FOIA request. Determinations relating to responsiveness and classification are handled exclusively by FOIA personnel, none of whom could arguably be considered as "potential" witnesses in the criminal investigation. To say the least, this argument begs further question in light of the CIA's admission that it has already identified thousands of relevant pages and begun processing through FOIA (and, in fact, would complete this process by September 2008) without any apparent harm to the criminal investigation. Exhibit "B".

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:   July 21, 2008

/s/
_____

Mark S. Zaid

# EXHIBIT "1-A"

Central Intelligence Agency



Washington, D.C. 20505

Mr. Mark S. Zaid                                        JAN 11 2008
Attorney at Law
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20036

Reference: F-2008-00610

Dear Mr. Zaid:

On 28 December 2007 the office of the Information and Privacy Coordinator received your
27 December 2007 Freedom of Information Act (FOIA) request made on behalf of your client,
Matthew Cole, for copies of any and all:

   A.  **Records pertaining to the 2005 destruction of videotapes of the interrogations of Zayn
       Abidin Muhammed Hussein Abu Zubaida (a/k/a Abu Zubaydah) and Abd al-Rahim
       al-Nashiri;**

   B.  **Records, including correspondence, created after September 11, 2001, with Members
       of Congress or its committees, the 9/11 Commission ("National Commission on
       Terrorist Attacks Upon the United States") or the Department of Justice about (1) the
       existence of videotapes of interrogations of terrorist suspects; (2) requests for access
       to videotapes of interrogations of terrorist suspect; (3) warnings or instructions not to
       destroy any videotapes of interrogations of terrorist suspect; and/or (4) any
       investigation into this Agency's destruction of the tapes identified in (a);**

   C.  **Records of interrogatory or document production requests, or any records discussing
       CIA responses thereto, received as part of any criminal prosecutions that sought
       acknowledgment of the existence and/or copies of videotape interrogations of terrorist
       suspects since September 11, 2001;**

   D.  **Records of Freedom of Information Act requests received by this Agency after
       September 11, 2001, for copies of any records pertaining to videotape interrogations
       of terrorist suspects;**

   E.  **Records pertaining to (a) that specifically reflect the identity of the attorney within
       this Agency's Office of General Counsel who approved the destruction of the
       videotapes and any records setting forth the policy or legal analysis underlying that
       conclusion.**

We have assigned your request the reference number above. Please use this number when
corresponding so that we can identify it easily.

The CIA Information Act, 50 U.S.C. § 431, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA. To the extent your request seeks information that is subject to the FOIA, we accept your request and will process it in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, and, unless you object, search only for CIA-originated records existing through the date of this acceptance letter. As a matter of administrative discretion, we have waived any fees associated with the processing of your FOIA request.

We have reviewed your request for expedited processing and determined that it meets the criteria. Therefore, we grant your request.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you object.

Sincerely,

Scott Koch
Information and Privacy Coordinator

# EXHIBIT "1-B"

**Mark S. Zaid**

| | |
|---|---|
| **From:** | Mei, Vesper (CIV) [Vesper.Mei@usdoj.gov] |
| **Sent:** | Monday, June 09, 2008 1:52 PM |
| **To:** | Mark S. Zaid |
| **Cc:** | Bradley P. Moss, Esq. |
| **Subject:** | JMP v. CIA tapes case |

Mark,

The prosecutors who are conducting the criminal investigation into the destruction of the tapes have asked us to move for a stay until the end of the investigation, which they currently anticipate will take six more months, and would seek to extend the stay if indictments and/or prosecutions follow.  They have made this request because they believe that the CIA's review and processing, and any release, of the documents involved in this case would substantially interfere with their ability to conduct a complete, thorough and untainted investigation.  Will you consent to this stay?  I plan to file our motion today or early tomorrow.

Thanks,
Vesper

1

**Mark S. Zaid**

| | |
|---|---|
| **From:** | Mei, Vesper (CIV) [Vesper.Mei@usdoj.gov] |
| **Sent:** | Friday, March 07, 2008 4:50 PM |
| **To:** | mark@markzaid.com |
| **Cc:** | Brad Moss |
| **Subject:** | RE: JMP v. CIA -- Tape Destruction |

Mark,

Yes, the six month period is for the review to take place and to release nonexempt documents at the end.

The CIA will likely invoke exemption 7(a) over most of the documents. As you know, doing so doesn't save the Agency any processing or review time, because the Agency still has to review the documents page by page and line by line for all of the other exemptions as well at the same time.

Vesper

-----Original Message-----
From: mark@markzaid.com [mailto:mark@markzaid.com]
Sent: Thursday, March 06, 2008 6:25 PM
To: Mei, Vesper (CIV)
Cc: Brad Moss; Office
Subject: Re: JMP v. CIA -- Tape Destruction

Thank you vesper.

If I understand correctly the six month period is for the review to take place and at the conclusion nonexempt documents will be released. Yes?

As an initial matter, does the cia intend to invoke exemption 7a as an overarching exemption? From this proposal I hopefully presume the answer is no, but I would appreciate specific clarification.

Thanks.

Mark
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Mei, Vesper (CIV)" <Vesper.Mei@usdoj.gov>

Date: Thu, 6 Mar 2008 18:05:01
To:"Mark S. Zaid" <mark@markzaid.com>
Cc:"Brad Moss" <brad@markzaid.com>
Subject: RE: JMP v. CIA -- Tape Destruction

Mark,

The Agency has double-checked, and 6 months is what it can do for its expedited response date. They were guessing that, in toto, they'd have to review a few thousand documents for responsiveness, then review the responsive documents within those few thousand for exemptions, segregability, etc., and six months is what they'd need.

Thanks,
Vesper

-----Original Message-----
From: Mark S. Zaid [mailto:mark@markzaid.com]
Sent: Thursday, March 06, 2008 12:36 AM
To: Mei, Vesper (CIV)

1

Cc: 'Brad Moss'; 'Mark S. Zaid'
Subject: JMP v. CIA -- Tape Destruction

Vesper, surely the Agency could have arrived at a suggested date for its expedited response by now? Fortunately for the Govt I have been too busy with my trial preparation and other pressing deadlines to file the TRO, but I am back in town now (at least will be after I return from FL on Monday) and I will be able to focus on this case. If we want to avoid involving the Court, I need a proposal to consider.

Thanks.

Mark

_____

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed.  It contains confidential information that may also be legally privileged.  Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purposes is strictly prohibited.  If you have received this e-mail in error, please notify me immediately by telephone, facsimile or e-mail and purge the original and all copies thereof.  Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

**Mark S. Zaid**

| | |
|---|---|
| **From:** | Mei, Vesper (CIV) [Vesper.Mei@usdoj.gov] |
| **Sent:** | Thursday, February 07, 2008 1:42 PM |
| **To:** | Mark S. Zaid |
| **Cc:** | Brad Moss |
| **Subject:** | RE: James Madison Project v. CIA III, 07-CV-2306-RBW |

Mark, I am checking with the Agency on all of this, and will let you know what I hear.

-----Original Message-----
From: Mark S. Zaid [mailto:mark@markzaid.com]
Sent: Thursday, February 07, 2008 1:38 PM
To: Mei, Vesper (CIV)
Cc: 'Brad Moss'; mark@markzaid.com
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Vesper -

Thanks for getting back to me. I would certainly prefer to negotiate a timetable, but six months seems somewhat excessive given the expedited nature of the case. Of course, I can't speak to the "large volume of records" that CIA says they have identified.

I know it is always an issue with the CIA, but I would be more amenable to agreeing to six months as the outside limit if we could agree to a partial release schedule along the way.

Also, while I recognize processing is continuing, the last thing I want to see is that we agree to a time frame for processing only to have that actually become the CIA's deadline for merely invoking various Exemptions and denying access to 99% of the responsive records. Is there any way you can provide me with some initial opinions on the likelihood of records being released?

Thanks.

Mark

_____

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is addressed. It contains confidential information that may also be legally privileged. Any copying, dissemination or distribution of the contents of this e-mail by anyone other than the addressee or his or her agent for such purposes is strictly prohibited. If you have received this e-mail in error, please notify me immediately by telephone, facsimile or e-mail and purge the original and all copies thereof. Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

-----Original Message-----
From: Mei, Vesper (CIV) [mailto:Vesper.Mei@usdoj.gov]
Sent: Thursday, February 07, 2008 1:10 PM
To: mark@markzaid.com
Cc: Brad Moss
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Mark --

1

The CIA is amenable to negotiating a timetable for the expedited release of responsive
records.  They have been working on your request, and some components have found a large
volume of records in their preliminary searches, though obviously the records have not yet
all been reviewed for responsiveness.  In addition, there are difficulties in copying,
obtaining, and reviewing records that are the subject of ongoing criminal investigations.
Given all that, the Agency thinks that they can have the records processed in 6 months.

Please let me know if that will be acceptable for you.


Thanks,
Vesper

-----Original Message-----
From: mark@markzaid.com [mailto:mark@markzaid.com]
Sent: Monday, February 04, 2008 5:31 PM
To: Mei, Vesper (CIV)
Cc: Brad Moss
Subject: Re: James Madison Project v. CIA III, 07-CV-2306-RBW

Thanks vesper!
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Mei, Vesper (CIV)" <Vesper.Mei@usdoj.gov>

Date: Mon, 4 Feb 2008 17:18:37
To:"Mark S. Zaid" <mark@markzaid.com>
Cc:"Brad Moss" <brad@markzaid.com>
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW


Thanks.  I am still waiting to hear from the CIA with respect to negotiating a timetable
for expedited release of responsive records.

-----Original Message-----
From: Mark S. Zaid [mailto:mark@markzaid.com]
Sent: Friday, February 01, 2008 1:15 PM
To: Mei, Vesper (CIV)
Cc: 'Brad Moss'; 'Mark S. Zaid'
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Vesper, we filed a First Amended Complaint today (presumably) adding Matthew Cole as a
plaintiff and now substantively challenging the failure of the CIA to timely produce
responsive records.

Do please let us know whether the CIA is amenable to negotiating a time table for
expedited release of responsive records as otherwise we will likely be filing a TRO prior
on or before Feb 11th.

Thanks.

Mark


_____

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is
addressed.  It contains confidential information that may also be legally privileged.  Any
copying, dissemination or distribution of the contents of this e-mail by anyone other than
the addressee or his or her agent for such purposes is strictly prohibited.  If you have
received this e-mail in error, please notify me immediately by telephone, facsimile or e-
mail and purge the original and all copies thereof.  Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200

2

Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax

-----Original Message-----
From: Mei, Vesper (CIV) [mailto:Vesper.Mei@usdoj.gov]
Sent: Wednesday, January 23, 2008 5:00 PM
To: Mark S. Zaid
Cc: Brad Moss
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Thanks, Mark.  I'm checking with the Agency for their position on negotiating a timetable
for the release of the documents.  I will file the motion for extension today.

-----Original Message-----
From: Mark S. Zaid [mailto:mark@markzaid.com]
Sent: Wednesday, January 23, 2008 2:20 PM
To: Mei, Vesper (CIV)
Cc: 'Brad Moss'; mark@markzaid.com
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Vesper,

There is no requirement to exhaust administrative remedies with respect to expedited
processing. I believe this has already been litigated (I think by me in fact in the Al
Fayed DC Cir case) and decided in favor of requestors.
If you believe otherwise, please identify the case or language in the statute to support
your notion and I will be happy to reconsider my position.

In any event, the CIA's response did not reach me before we filed suit, thus there was no
requirement for exhaustion. This, too, has been litigated and I have prevailed on it.

JMP and Matt Cole are two different distinct clients. There is no mootness issue for the
current case. At the moment it is legally and factually irrelevant that the CIA granted
Cole expedited processing but denied JMP.
Cole is not yet a plaintiff in the case.

Respectfully, we will not be dismissing the case. Instead, we will be amending the case to
include a substantive challenge to the withholding of responsive records for both JMP and
Matt Cole (which are both legally ripe to pursue since no response has been received
within 20 working days), as well as to enforce expedited processing, i.e., set up a
judicially imposed time table. We will also be filing a TRO to accomplish this objective.
Of course, I will provide you with the appropriate notice.

I have no objection for you to seek a 2 week extension. Makes perfect sense in light of
the above plans.

Notwithstanding the above, I do invite the CIA to negotiate an acceptable time table for
release of documents for both requestors in order to avoid protracted litigation that will
undoubtedly achieve the same result (and potentially open the doors for attorney's fees).
We would happily consider any suggestions you wish to offer.

Thanks.

Mark

_____

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is
addressed.  It contains confidential information that may also be legally privileged.  Any
copying, dissemination or distribution of the contents of this e-mail by anyone other than
the addressee or his or her agent for such purposes is strictly prohibited.  If you have
received this e-mail in error, please notify me immediately by telephone, facsimile or e-
mail and purge the original and all copies thereof.  Thank you.

3

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax


-----Original Message-----
From: Mei, Vesper (CIV) [mailto:Vesper.Mei@usdoj.gov]
Sent: Wednesday, January 23, 2008 11:24 AM
To: mark@markzaid.com
Cc: Brad Moss
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW

Mark,

With respect to the original complaint in this suit, we believe that it is subject to a
motion to dismiss because you did not exhaust the CIA's timely
12/19/07 denial of your 12/9/07 request for expedition.  It is also moot, because
expedition was ultimately granted, for your second, identical FOIA request on behalf of
your client, Matthew Cole.  We hope that you will agree to voluntarily dismiss the
complaint as a result.  If not, we will be seeking a two-week extension in which to
respond and file our motion, and hope that you will consent.

With respect to the second request on behalf of Matthew Cole, any request for expedition
would now, of course, be moot.  Apart from that, a lawsuit on that request would at this
point be premature because you have not yet exhausted with respect to that request, and
amendment of the initial complaint to include the second request would be futile because
of the failure to exhaust.

Please let me know today if you will agree to voluntarily dismiss the complaint, or
alternatively, agree to the two-week extension for us to respond.

Thanks,
Vesper

-----Original Message-----
From: mark@markzaid.com [mailto:mark@markzaid.com]
Sent: Wednesday, January 23, 2008 9:55 AM
To: Mei, Vesper (CIV)
Cc: Brad Moss; Office
Subject: Re: James Madison Project v. CIA III, 07-CV-2306-RBW

Vesper, thanks for the info.

It obviously does impact our intentions.

What date does the CIA propose for its substantive response as part of "expedited
processing"? And will this be a wholesale invocation under exemption 7(a) or can we work
around it?

I really need to know these answers before we can decide what to do. Perhaps we can reach
and accomodation and avoid protracted litigation.

I certainly consent to a short extension of a week or so if you need time for the agency
to decide these answers.

Mark
Sent via BlackBerry from T-Mobile

-----Original Message-----
From: "Mei, Vesper (CIV)" <Vesper.Mei@usdoj.gov>

Date: Wed, 23 Jan 2008 09:25:19
To:"Mark S. Zaid" <mark@markzaid.com>

4

Cc:<brad@markzaid.com>
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW


Mark, it turns out that they granted the expedition, by letter dated January 11.  I have
scanned and attached it.  Given that, your complaint seems to me to be moot.  Please let
me know how you plan to proceed, and, if you're still planning to amend, would you object
to our having 30 days after you file your amendment to respond?  Again, I'll need to file
this motion today, so please let me know ASAP.

Thanks,
Vesper


----------------
 From: Mark S. Zaid [mailto:mark@markzaid.com]
Sent: Tuesday, January 22, 2008 7:44 PM
To: Mei, Vesper (CIV)
Cc: brad@markzaid.com; mark@markzaid.com
Subject: RE: James Madison Project v. CIA III, 07-CV-2306-RBW



Vesper, sure, no problem. In fact, we are going to be amending the Complaint so it makes
perfect sense to wait until we do so.

Can you please check with the CIA's FOIA office and query whether they granted or denied
my client Matthew Cole's request for expedited processing?
The request is attached. Their response was due January 7, 2008, but last time I checked
with my office I had not yet received a reply. Their decision will determine a great deal
as to how we amend the Complaint, which is ready to be filed.

Mark


---------------------------------------------------------------------------------------

This electronic mail (e-mail) transmission is meant solely for the person(s) to whom it is
addressed.  It contains confidential information that may also be legally privileged.  Any
copying, dissemination or distribution of the contents of this e-mail by anyone other than
the addressee or his or her agent for such purposes is strictly prohibited.  If you have
received this e-mail in error, please notify me immediately by telephone, facsimile or e-
mail and purge the original and all copies thereof.  Thank you.

Mark S. Zaid, Esq.
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809 direct
(202) 330-5610 fax


----------------

From: Mei, Vesper (CIV) [mailto:Vesper.Mei@usdoj.gov]
Sent: Tuesday, January 22, 2008 6:44 PM
To: mark@markzaid.com
Cc: brad@markzaid.com
Subject: James Madison Project v. CIA III, 07-CV-2306-RBW


Hi Mark,

CIA counsel was not assigned to this new FOIA case until January 15, and it was just
assigned to me today. We currently have an answer or other response due on Monday,
January 28, but I wanted to see if you would consent to a two-week extension on the answer
or other response, or until Feb. 11?
Please let me know ASAP, as I will need to file the motion tomorrow, opposed or not.


Thanks,

Vesper


Vesper Mei

Trial Attorney

Federal Programs Branch
U.S. Department of Justice, Civil Division 20 Massachusetts Avenue, N.W.
Washington, DC  20530
Telephone:  (202) 514-4686
Fax:  (202) 616-8470