UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT et al.        *
                                        *
            Plaintiffs,                 *
                                        *
      v.                                *        Civil Action No. 07-02306 (RBW)
                                        *
CENTRAL INTELLIGENCE AGENCY             *
                                        *
            Defendant.                  *
                                        *
*     *     *     *     *     *     *     *     *     *     *     *

PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFFS' NUNC PRO TUNC MOTION FOR AN EXTENSION OF TIME
TO SUBMIT OPPOSITION TO DEFENDANT'S MOTION
FOR A STAY OF PROCEEDINGS

Plaintiffs The James Madison Project and Matthew Cole (collectively referred to as

"JMP") filed the present Nunc Pro Tunc Motion for an Extension of Time to Submit

Opposition to Defendant's Motion for a Stay of Proceedings ("Nunc Pro Tunc Motion")

(Docket No. 10) on July 21, 2008. As undersigned counsel readily conceded in that Nunc

Pro Tunc Motion, the need for an extension of time was exclusively due to undersigned

counsels' "inexcusable failure to appropriately maintain their calendar schedules". Nunc

Pro Tunc Motion at 1.

The defendant Central Intelligence Agency ("CIA") filed its Opposition to Plaintiffs'

Nunc Pro Tunc Motion for an Extension of Time to Submit Opposition to Defendant's

Motion for a Stay of Proceedings ("CIA's Memo")(Docket No. 12) on July 24, 2008. In

it, the CIA asserts that JMP's Nunc Pro Tunc Motion fails to articulate sufficient factual

grounds for this Court to conclude that JMP's failure to timely file consisted of

"excusable neglect". CIA's Memo at 3. Relying upon Institute for Policy Studies v.

Central Intelligence Agency, 246 F.R.D. 380 (D.D.C. 2007), the CIA argues that a

mistake in the form of "inadvertent mis-calendering" does not constitute "excusable neglect" and that JMP's Nunc Pro Tunc Motion should be denied. Id. at 3.

For the reasons set forth below, JMP asserts that the legal standard applied in Institute for Policy Studies is actually more complex than the CIA would have this Court believe and that the D.C. Circuit has upheld the discretionary decision by district court judges to permit late filings due to "excusable neglect" involving a mistake by counsel. Therefore, JMP's Nunc Pro Tunc Motion should be granted and a new deadline for the CIA's reply should be set.

## ARGUMENT

### A.    The Appropriate Legal Standard For Evaluating A Nunc Pro Tunc Motion For Extension Of Time To File A Response Late Is The Four Factor Balancing Test Set Forth By The Supreme Court

The Supreme Court has opined, and the D.C. Circuit has affirmed, that district court judges evaluating a party's request for an extension of time to submit a late filing should consider four factors in determining whether the movant party has sufficiently demonstrated the existence of "excusable neglect". See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (1993). See also In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209 (D.C. Cir. 2003)("Rule 6(b) states that 'the court for cause shown may at any time in its discretion … permit the act to be done where the failure to act was the result of excusable neglect.'")(quotations in original), citing Fed. R. Civ. P. 6(b). Specifically, those four factors include: (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether  the movant acted in good faith. In re Vitamins,

327 F.3d at 1209, <u>citing</u> <u>Pioneer</u>, 507 U.S. at 395. The determination of whether the movant party's neglect is excusable "is at bottom an equitable one, *taking account of all relevant circumstances* surrounding the party's omission". <u>Institute for Policy Studies</u>, 246 F.R.D. at 383 (emphasis added).

Although not expressly, the CIA does attempt to implicitly argue that, *per se*, a scheduling mistake by counsel can not constitute "excusable neglect". CIA's Memo at 3-4, <u>citing</u> <u>Institute for Policy Studies</u>, 246 F.R.D. at 384 (collecting cases showing that "[t]he case law from this court is replete with examples of untimely filings being rejected where the only triggering Pioneer factor was, as is the case here, a mistake made by counsel"). As the D.C. Circuit has explained, though, the <u>Pioneer</u> standard precludes the adoption of a *per se* rule and in fact was purposely fashioned to be a flexible rule "which, by its nature, counsels against the imposition of a *per se* rule on attorney neglect". <u>In re Vitamins</u>, 327 F.3d at 1209. <u>See also</u> <u>Id</u>. at 1209-10 ("Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' … is a somewhat 'elastic concept'")(quotations in original).

The D.C. Circuit even went so far as to question the rulings by other circuits that "certain types of attorney neglect can never constitute excusable neglect", instead reiterating that the "question of whether attorney error may constitute 'excusable neglect' is within the discretion of the district court" and should be determined by considering the balance of the four <u>Pioneer</u> factors. <u>See</u> <u>Id</u>. at 1210. Applying the <u>Pioneer</u> standard to the particular factual circumstances and exercising their own discretion regarding "case-management decisions", district court judges have at least twice determined, and the D.C.

Circuit has upheld, that the other three <u>Pioneer</u> factors outweighed the fact that the reason

for the delay was "within the reasonable control of the movant" by way of a scheduling

mistake by counsel. <u>In re Vitamins</u>, 327 F.3d at 1209 (given the absence of prejudice to

opposing party, the shortness of the delay and its lack of an adverse impact on judicial

proceedings, as well as lack of evidence indicating bad faith, fact that counsel's mistake

was reasonably within its control was outweighed); <u>Yesudian ex rel. United States v.

Howard Univ.</u>, 270 F.3d 969, 971 (D.C. Cir. 2001) (although counsel's error was

"foolish", it was outweighed by the other three <u>Pioneer</u> factors as well as the "general

preference for resolving cases on the merits").

**B.    Application Of The <u>Pioneer</u> Standard Favors Granting JMP's Nunc Pro
       Tunc Motion**

The third <u>Pioneer</u> factor, the "fault" on the part of the movant party's counsel, is

admittedly the "most important single factor". <u>Institute for Policy Studies</u>, 246 F.R.D. at

383. JMP does not dispute, and has in fact already conceded voluntarily, that the reason

for the delay in its filing was due exclusively to undersigned counsels' own failure to

appropriately maintain their calendar schedules. <u>See</u> Nunc Pro Tunc Motion at 1.[1]

However, when balanced against the other three <u>Pioneer</u> factors, the strength of the

"fault" factor is clearly outweighed in a manner similar to the circumstances present in <u>In

re Vitamins</u> and <u>Yesudian</u>.

As an initial matter, the CIA has not identified, nor can JMP contemplate, the

potential prejudice that the CIA would incur were this Court to grant JMP's Nunc Pro

Tunc Motion. The only effect that would be derived from that action would be that this

---

[1] The CIA, in fact, has chosen to focus exclusively on the "fault" factor to the exclusion
of the other three <u>Pioneer</u> factors. <u>See</u> CIA's Memo at 3-4.

Court would accept (instead of striking from the record) JMP's Opposition to Defendant's Motion for a Stay of Proceedings ("Opposition Brief"). This would not have any detrimental effect on the CIA's ability to submit a reply brief addressing the arguments raised by JMP and would not place in the CIA in any worse of a situation than the one in which it would have been placed had JMP actually timely filed the Opposition Brief.[2] Putting a party in the exact same situation as the one in which it would have been absent particular conduct, by definition, does not constitute an injury equivalent to "prejudice". Cf. Sparrow v. Commissioner, 949 F.2d 434, 440 (D.C. Cir. 1991)(monetary relief owed due to Title VII discrimination can only put party back in same position he would have been in absent discrimination); Bliss v. Johnson, 279 F. Supp. 2d 29, 35 (D.D.C. 2003)(no APA violation due to the fact that Correction Board had corrected plaintiff's record to ensure he was entitled to severance pay and therefore "the injustice was removed by placing plaintiff in the *same position he would have been had no error been made*")(emphasis added).

　　Nor is there any evidence indicating that the length of delay caused by JMP's Nunc Pro Tunc Motion has been substantial or that it will have a material, adverse impact on these proceedings. At a minimum, any delay merely ended up serving the CIA's overarching interests at the moment, namely to forestall the reviewing and classifying of the records responsive to JMP's FOIA request. Furthermore, the delay consisted of a mere two weeks – or at most four weeks, if including the time spent addressing the

---

[2] Arguably, the only possible "prejudice" that CIA could incur as a result of this Court granting JMP's Pro Tunc Motion would be that the CIA would not be able to request, *without opposition*, that this Court grant its Motion for a Stay of Proceedings. Quite honestly, JMP does not realistically believe that the CIA is even implicitly attempting to advocate this argument and therefore rejects it outright as nonsensical.

appropriateness of JMP's Nunc Pro Tunc Motion – and therefore was not substantial. Most importantly, granting JMP's Nunc Pro Tunc Motion will not have any adverse impact on these proceedings other than to permit both parties to submit their legal briefs addressing the appropriateness of the CIA's Motion for a Stay of Proceedings.[3]

Lastly, there is no evidence of – nor does JMP believe the CIA would argue there is any reason to suspect – bad faith on the part of undersigned counsels. As outlined in the Nunc Pro Tunc Motion, Mr. Moss incorrectly read this Court's June 30, 2008 Minute Order as setting the due date for JMP's Opposition Brief at July 21, 2008, the date which actually was set for the CIA's reply brief. Nunc Pro Tunc Motion at 2. Relying, erroneously as it was, upon that information, Messrs. Zaid and Mr. Moss prepared JMP's Opposition Brief over the course of several weeks in July.[4] The intention was to submit the Opposition Brief on July 21, 2008. When the CIA filed its reply brief at 10:30 am on July 21, 2008, Messrs. Zaid and Mr. Moss rechecked the docket calendar and immediately recognized their scheduling error. At 10:55 pm and 11:07 pm, undersigned counsel submitted, respectively, the Nunc Pro Tunc Motion and JMP's Opposition Brief.[5]

---

[3] JMP's undersigned counsels are fully aware of CIA counsel's upcoming maternity leave and have previously indicated that they will not object to a potentially lengthier-than-normal extension of time for the submission of the CIA's reply brief should the need arise, particularly in order to ensure a smooth transition to new CIA counsel. In light of the importance of the particular information at issue in this litigation and the potential for delays ranging from six months to several years if the CIA's Motion for a Stay of Proceedings is granted by this Court, the need to provide the CIA with extra time for submitting its reply brief in order to bring new counsel up to speed is a price JMP is more than willing to pay.

[4] If necessary, JMP is able and willing to provide this Court with copies of the itemized billing invoice for this particular litigation for the month of July. That invoice demonstrates that work was done on the Opposition Brief over the course of several weeks and increased considerably as the July 21st deadline approached.

[5] Again, although JMP does not believe that CIA is even implicitly attempting to argue that JMP drafted the entire Opposition Brief on July 21, 2008 in an attempt to sneak it in

Given the lack of any prejudice to the CIA, the insubstantial amount of delay, the absence of any adverse effect upon the proceedings, and concrete evidence that undersigned counsel acted in good faith throughout, the "fault" factor is arguably outweighed by the other three Pioneer factors. Therefore, this Court would be well within its discretion to grant JMP's Nunc Pro Tunc Motion and accept JMP's Opposition Brief.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Nunc Pro Tunc Motion should be granted.

Date:   July 31, 2008

Respectfully submitted,

/s/
_____
Mark S. Zaid, Esq.
DC Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

---

under the premise of a scheduling error, any support for that notion is negated, at a minimum, by the length and detail of the Opposition Brief itself. It arguably is not – and could not be – within the abilities of undersigned counsels to put together a 17-page opposition brief, along with a declaration and exhibits, in a mere twelve hours.